## Peters *versus* Grubb.

21　　455
28 SC c312

1. In a lease of a furnace and grist and saw mill, the lessor promised and agreed "to protect" the lessee, &c., "in the use and enjoyment" of the premises, and "to warrant and defend the premises to him and them against the claims or interruption or molestation of any person or persons whomsoever, so that the said lessee shall suffer no loss from any defect of title of the lessors to the premises:" *Held,* that this was a covenant for quiet enjoyment and also of warranty.

2. The covenant for quiet enjoyment embraced an adverse claim to the use of the water of the stream made on the part of *The Commonwealth,* as it would have protected against claims on the part of *private persons.*

3. The water of the stream having been taken for the temporary use of the Pennsylvania Canal by the officers of the Commonwealth, the original entry under its right of eminent domain having been made years *prior* to the lease in question, the case of Dobbins *v.* Brown, 2 *Jones* 75, was not applicable, and such taking was a breach of the covenant for quiet enjoyment.

4. Parol evidence as to the time when the contest commenced between the Commonwealth and the then owner as to the right to the water, and the acts and declarations of the parties in reference thereto, was admissible, in order to aid in the construction of the lease; and it was proper to submit to the jury the question whether the parties to the lease had in view the claim of *the state* to the use of the stream.

5. The right to the water was demised by the lease of the furnace and mills, it being necessary to the enjoyment of the estate.

6. It was not incumbent on the tenants to whom the lessees had assigned the residue of the term and who were in possession when the interruption took place, to show that they were evicted from the premises or *wholly* deprived of the use of the water by the officers of the Commonwealth; the covenant for quiet enjoyment was broken by a partial deprivation by the lawful act of a paramount claimant, and the assignees were entitled to have the rent apportioned or extinguished according to the extent of their injury.

ERROR to the Common Pleas of *Dauphin county.*

This case, in the Court below, was an action of replevin to August Term, 1850, by Clement B. Grubb and Robert B. Cabeen *v.* Abraham Peters and Jacob H. Gamber, for 100 tons of pig metal and 1000 tons of iron ore, which had been distrained upon under a warrant executed by Peters and Gamber. The taking was avowed, and it was replied that there was no rent in arrear. Rent to the amount of $800 was claimed.

The Swatara was declared a public highway in 1771. Afterwards, James Hamilton built a grist-mill on the Swatara, near its mouth, on what is now the Christiann Furnace estate. After the death of Hamilton, about 1830, John Gamber purchased at an Orphans' Court sale, 20 acres and 116 perches land, and said grist-mill, &c. In 1834, John Gamber commenced the erection of Christiann Furnace on said tract of land; and in the spring of the same year, engineers under the direction of the canal commissioners (and in pursuance of laws previously passed) commenced several surveys of the route of the Columbia division of the Pennsylvania Canal.

John Gamber about that time made a proposition to the canal

[Peters *v.* Grubb.]

commissioners, to the effect that if the canal commissioners would build an addition of *six* feet on his dam in the Swatara, and would keep the said dam in good order, and give him the surplus water, &c., he "would allow the Commonwealth a sufficient supply of water to feed the canal to Columbia," and would not ask any damages.    The canal commissioners, without taking any notice of Gamber's proposition, located the Columbia feeder, and built their dam in the Swatara (in the summer and fall of 1834), raising their dam about two feet three or six inches higher than Gamber's old dam, and locating it about 300 yards further down the stream. At the same time the Commonwealth's agents caused a gate to be put at the head of the race leading to Gamber's mills and furnace, the sill of which gate was raised one foot higher than the sill of the gate at the head of the Columbia feeder, to enable the state to draw all the water into the feeder.    From 1834 up to the time of trial, the Commonwealth always took the water of the Swatara to the exclusion of the Christiann Furnace estate, whenever the low stage of water required them to do so, although Gamber lowered the sill of his head gate.

In the year        , John Gamber sold two undivided third parts of the Christiann Furnace estate, then embracing 20 acres and 116 perches of land, and nine lots of ground in Portsmouth, and took mortgages to secure the payment of the purchase-money.    The purchasers failing to perform, the mortgages were sued out, and Abram Peters and Jacob H. Gamber became the purchasers of said two-thirds.

On the 19th December, 1848, Abram Peters and Jacob H. Gamber leased to Evans W. Shippen (Clement B. Grubb, one of the plaintiffs, being his surety) the two undivided third parts, " of and in all that furnace, grist-mill, saw-mill, dwelling-houses, barns, stables, coal houses and other buildings, and tract or piece of land belonging thereto, situated in Londonderry township, in Dauphin county, on the south side and near the mouth of the Swatara creek, and containing twenty acres and one hundred and sixteen perches, more or less; together with the two undivided third parts, owned by Peters and Gamber, of nine lots of ground in the town of Port Royal, adjoining the above tract; the whole premises hereby leased constituting what is called the Christiann Furnace estate.    In the use and enjoyment of which hereby leased premises, during said term, the said Peters and Gamber hereby promise and agree to protect the said Evans W. Shippen, his heirs, executors, administrators, and assigns, and to warrant and defend the premises to him and them, during that term, against the claims or interruption, or molestation of any person or persons whomsoever, so that the said lessee shall suffer no loss from any defect of title of the lessors to the premises."

[Peters v. Grubb.]

The lease was to commence on the 1st April, 1849, and continue *three* years, at an annual rent of $800, payable at the end of each year.   The lessee took possession under his lease.   On the 14th July, 1849, the supervisor of the Eastern Division of the Pennsylvania Canal notified Messrs. Grubb & Cabeen, plaintiffs, that if there was not a rise in the Swatara before the 17th July, the Commonwealth would be obliged to shut off the water from the furnace.   On the 26th July, 1849, E. W. Shippen made a formal assignment of the lease for the residue of the term to C. B. Grubb and Robert B. Cabeen, plaintiffs, who were in possession of the premises; and on the same day the gate of the forebay to the furnace was partly closed, and the next day it was closed entirely by agents of the Commonwealth.

The lease authorized Shippen to repair " the forebays," the expense to be jointly borne by Peters, Gamber, and Shippen; after which Shippen was to keep the forebays in reasonably good order at his own expense.   It appeared in evidence that the forebay leaked.   It was also proved that Grubb & Cabeen built an additional stack to the furnace, and thus doubled the demand for water-power.

The sub-lessees continued in possession of the furnace up to the trial, viz., 18th December, 1851, they having underlet the saw-mill on the premises to D. Kendig, for one year from the 1st of April, 1851, for $400.   In the agreement with Kendig, they agreed not to use the water for the furnace during the term so as to interfere with the saw-mill.

The rent not having been paid, Peters and Gamber issued their landlord's warrant on the 26th April, 1850, and levied on a quantity of pig metal, which was replevied by the plaintiffs.   The defendants justified taking the distress for rent due.   The plaintiffs replied that there was no rent in arrear, and a trial was ordered. The defendants gave in evidence the articles of agreement leasing the property to E. W. Shippen, and showed that there was one year's rent due.

The plaintiffs proved that the Canal Commissioners had taken all the water of the Swatara to feed the canal, and in consequence of the low stage of water had caused the furnace gate to be shut down.   Plaintiffs also showed that they had a large stock on hand at that time, and alleged that they had sustained heavy damages.   The defendants denied that there were any covenants in their lease that would make them respond in damages for acts of the state officers in the premises.

On the trial it was proposed on part of the plaintiff, to prove the declarations of *Peters* since the date of the lease to the plain-

[Peters *v.* Grubb.]

tiffs, to the effect that he claimed to have a better right to the water-power than the state had. The evidence was admitted, and excepted to.

The Court also received in evidence on part of the plaintiffs, a letter dated 15th January, 1834, from John Gamber to the Board of canal commissioners, concerning the water from his dam on the Swatara creek. It was objected that the defendants, Peters and Gamber, were not to be affected by it, they being purchasers of Gamber's property at sheriff's sale, and this letter being unknown to them. The letter was received, its effect to be decided on afterwards. Exception on part of the defendants.

On the part of the defendants points were proposed. The first was to the effect that the construction of the lease was a question of law for the Court, who were to construe it according to what they may believe to have been the intention of the parties, so far as they can gather that intention from the agreement; and the Court are asked to say as a question of law, that the lease contains no covenant, which would defeat the recovery of the rent, although the Commonwealth, or Commonwealth's agents, used the waters of the Swatara, to the exclusion of a supply necessary to propel the furnace.

2. That as it is not stated in the lease that the lessee was to take the premises *with the appurtenances,* the lessee took only what he contracted for—and that if the jury believe that the things thus demised were not taken *absolutely* from the lessee, then this is not a case in which the rent would either be extinguished, or apportioned by the act of the law; and this, although the lessee may have been temporarily deprived of the use of the water for the furnace.

3. That the lessee could not retain the possession of the premises, and withhold the payment of the rent.

The fourth was to the effect that if the lessee relies on a contract by Gamber with the canal commissioners it should be strictly proved—that the declarations of Gamber would not establish such a contract. That if proved it would not affect the purchasers of his property, unless they *had notice of it.* Also, that if the situation of the dam and feeder was such as to put the said purchasers on their guard, it was also sufficient to notify the lessees that the Commonwealth had a paramount right to the waters of the Swatara. And that as the right of eminent domain was in the Commonwealth, the acts of the Commonwealth's agent would well be referred to the exercise of that right and not to a contract with Gamber.

[Peters v. Grubb.]

The 6th was, that if the evidence was believed, the plaintiffs had notice before their purchase from Shippen, that the Commonwealth would take the water when it might be required for the canal, and that they knew that there was no covenant for the enjoyment of the water.

The Court were requested to withdraw the parol testimony from the jury, and instruct them that the defendants were entitled to a verdict.

PEARSON, J., charged the jury, *inter alia*, that there could be no set-off in replevin, yet that where there has been a violation of contract on the part of the landlord by which the tenant has been injured, it is a ground of equitable defence against paying the rent, and the tenant may prove the amount of damage he has sustained where the claim is covered by a covenant or agreement, under which he obtained the possession of the property.

He charged that though the words "with the appurtenances" were not used in the lease in describing the property, they were not necessary to the case of the plaintiffs—that the right to the water passed as an incident to the furnace and mills. He said that the proposals of Gamber to the canal commissioners were in evidence, but that he did not understand that they were complied with on the part of the state.

He further charged that the entry by the state would not suspend the rent or diminish its amount, if the tenant had no covenants for his protection. That the dam, the feeder, and the gates were structures evident to the senses, of which the tenant was bound to take notice; and also that he was bound to know the right of the state to use the water. But he charged that the case turned on the construction of the covenant, and to what injuries the parties intended it to apply. It was a covenant for quiet enjoyment, and also of warranty. The covenant of course extended only to *lawful* interruptions.

"No man is presumed to covenant against lawless ones, as the tenant can protect himself against them by actions of trespass, which the landlord could not sustain, he having parted with the possession. Nor would it be presumed that the landlord covenanted against any *original* entry by the state to make roads, take and use the water, or exercise other acts of prerogative. No man is presumed to contract against *bare possibilities*, without express words. Besides, for such injuries the tenant has his redress by claiming damages, which it is to be presumed the public will accord and pay. If, then the state had entered *for the first time*, and drawn off the water after the lease was executed, we should hold that it did not come within the covenant for quiet enjoyment, although the same is expressed in strong and broad terms. The tenant would have to seek his redress by asking for damages

under the internal improvement laws. But in the present case the entry had been made some thirteen or fourteen years before the dam was built, water drawn off when required for the canal, and the damage, if any, was done to John Gamber, the then owner, and paid, or presumed to be settled with him.

" The right to exclude him *entirely* from the use of the water had been claimed by the state agents, but never exercised; had been a subject of dispute between him and them, and also with the plaintiffs after their purchase. Shippen, in taking his lease, would very naturally apprehend difficulty about the use of the water, and as the defendants denied the right of the state to stop their works, it is no more than probable that they would guarantee against it. Have they done so? We consider the words quite broad enough to cover the case, and applicable to it, more especially as there does not appear to have been any other disputed right, no defect or apprehended defect in the title, or pretence of right in any other person to interrupt the tenant in the enjoyment of his lease."

He further said : " There are, as we have observed, two distinct covenants; one for quiet enjoyment, and against the claims, interruption, or molestation of any person; the other a warranty of title. Why covenant against the interruption or molestation of any one, if the landlord and tenant had not feared this contest with the state agents ? The warranty of title has always been held to be a distinct covenant from that for quiet enjoyment, and is applicable to the latter expressions of the covenant, 'so that the said lessee shall suffer no loss from any defect of title of the lessors to the premises.' Those are the only words which in my mind raise any doubt as to the intention of the parties; but it is an axiom of the law that a subsequent limited covenant does not restrain a preceding general one; *Sugden on Vendors*, vol. 2, p. 113; and every man's covenant is to be construed most strongly against himself, if his words are doubtful. If you believe these parties had in view the claim of the state to interrupt the occupant in the use of the water, and made the contract with a view to that, we instruct you that the covenant for quiet enjoyment in the lease is broad enough to protect the tenant or his assignees, and render the lessors responsible for the damages sustained by reason of such interruption."

It is also contended on part of the defendants, that if the tenants were not *absolutely* deprived of the use of the water, but only *temporarily*, they are not entitled to relief. He charged " that if injured, interrupted, or partially deprived of the enjoyment of the property, they would be relieved to the extent of the injury. Nor in a case like the present is it necessary for the

[Peters v. Grubb.]

tenants to throw up their lease; it could not be done without their suffering still greater loss than by holding on.

"It is also argued that even if the water was APPURTENANT to the furnace and mills, an adverse entry upon and deprivation of it was no violation of the covenant for which the rent could be apportioned, and several English authorities have been read to establish the doctrine.

"Independent of our own system of jurisprudence, founded on principles of equity, that doctrine would not prevail in a Court administering strict law in England. Although it is so declared in actions of covenant between lessor and lessee, yet it is otherwise between the lessor and the assignee of the lessee, and Lord ELLEN-BOROUGH says it never was applied to actions of debt for rent, or to avowries in replevin: 2 East 579. The tenant need not be absolutely deprived of the demised premises in any case. It is sufficient if he be deprived of the use of it, to enable him to have the rent apportioned or satisfied according to the extent of the injury.

"It is also contended that as the plaintiffs took the assignment of the lease, with full knowledge that the state had the right to exclude, and probably would exclude them from the use of the water, they cannot defend against the payment of the rent. We have already said that the knowledge of Shippen, of the right and power of the state to interrupt him in the use of the water, did not deprive him of the benefit of his covenant for its quiet enjoyment, but was probably the cause of his taking the contract in the form he did; and the plaintiffs accepting an assignment of his lease, cannot be prevented from setting up this defence. Both they and their assignor had a right to rely on the covenants, and the landlord must take care to enter into no contract that he cannot make good. If Shippen had accepted the lease without the covenant for quiet enjoyment, the principle of caveat emptor would have applied to him; but when he calls on his landlord for protection in his term, the latter must take care as to the covenants he makes." To this charge the defendants' counsel excepted.

December 19, 1851, verdict for the plaintiffs, with six cents damages and six cents costs.

It was assigned for error, 1. That the Court erred in not withdrawing the parol evidence, and instructing the jury that in law the defendants were entitled to a verdict. 2. In the construction of the lease, that the water was demised. 3. In the construction of the lease as to the warranty. 4. In instructing the jury to consider whether the parties in making the lease, had in view the claim of the state, thus referring to the jury the construction of the lease. 5. In refusing to instruct the jury that if the tenants were not evicted, the covenant was not broken by the lessor; and

[Peters *v.* Grubb.]

that if the tenants or lessees were not *absolutely* deprived of the use of the water, the rent would not be suspended. The 6th was to the same effect. 7. That the Court erred in the answers to the *points.* 8. In the admission of the evidence contained in the two bills of exception.

The points in controversy were, first, The officers of the Commonwealth in the exercise of the right of eminent domain, having taken the water of the Swatara to supply the canal, were the lessors responsible in damages as for a breach of their covenant?

2. Did the covenants apply to the acts of *the Commonwealth?*

3. Whether the words used in the lease constituted a covenant for quiet enjoyment against the consequences of a defective title, and of any disturbance thereupon; or did they, as ruled by the Court below, create "*covenants* both for quiet enjoyment and of warranty?"

4. As the demise was of the Christiann Furnace estate, without using the words "with the appurtenances," would not the lessee merely take all that was usually and ordinarily enjoyed with that estate; or was there either an express or implied covenant that the lessee should have a right to the waters of the Swatara, as appurtenant to the furnace and mills, paramount to the right of the sovereign?

5. Did the acts of the Commonwealth's officers amount to an eviction of the lessee from the premises, and was the rent thereby apportioned or suspended; or even if there had been a partial or temporary eviction of the thing demised out of which no rent issued, would the rent have been thereby apportioned?

*H. Alricks,* with whom was *Fordney,* for the plaintiffs in error. —As to the first error the question was, whether the declaration of Peters (one of the plaintiffs) was to be considered in determining the legal construction of the covenants.

As to the first point: It was contended that as the Swatara was a public highway, the owners of the Furnace estate could use its waters only in subordination to the rights of the public, and that it was to be presumed that the parties in entering into the lease, had reference only to existing rights. The gates of the furnace had been built by the officers of the state, and were to be so used as not to retard the business on the public improvements, and it was alleged that there was no covenant against the paramount right of the Commonwealth. It was said that the covenant for quiet enjoyment, extending only to entries or interruptions by those having a lawful title, has not been extended to protect against an easement acquired *by the public,* though acquired under its prerogative: Dobbins *v.* Brown, 2 *Jones* 75. That case was not reported when this cause was tried. In that case also, the

[Peters v. Grubb.]

vendor had *released* all claim for damages against the Commonwealth. In this case, the lessees continued to enjoy the premises in subordination to the rights of the Commonwealth: 4 *Wharton* 86; Frost v. Earnest, 6 *Mass.* 246; 2 *Roscoe on Actions*, 29 *Law Lib.* 424–5.

2. It was contended that the covenant against the claim, &c., of any *person* or *persons* did not amount to a warranty against the acts of the sovereign.

3. It was contended that the covenant in this case was for quiet enjoyment against any defect of title in the lessors, and for *nothing more*: *Platt on Cov.* 3 *Law Lib.* 136; *Id.* 312. As to the declaration of Peters, made after the lease was executed, reference was made to *Platt on Cov.* 144, "in the construction of a covenant no attention is paid to the acts of the parties." This declaration, however, showed only that he was mistaken as to a point *of law*, and not about a question of fact.

4. Granting that the right to the water passed as appurtenant to the thing demised, it would be in no other manner than that in which it had been ordinarily enjoyed. The lease does not assert *a paramount claim* to the water of the Swatara on part of the lessors, and we are to be governed by the contract of the parties, and not by their loose declarations.

5. The case of Dobbins v. Brown, cited, shows that the entry by the officers of the state did not amount to any eviction.

*Franklin* and *McCormick*, for defendants.—It was contended that there were two distinct and separate covenants, one for quiet enjoyment, the other of general warranty. That the clause in the lease, "so that the lessee shall suffer no loss from any defect of title of the lessors to the premises," was intended to extend rather than restrain the undertaking of the lessors, and that they were not applicable to the covenant *for quiet enjoyment*, which covenant alone was sufficient for the protection of the plaintiff: 2 *Sugd.* 113.

The propelling power of a furnace and mills is not a mere appurtenance; it is an incident of the estate; a necessary part of them, and a covenant for quiet enjoyment extends to such a power as is a necessary incident to the enjoyment of the premises: *Sheppard's Touch.* 89; *Coke Litt.* 546; *Id.* 1216; 1 *Saunders* 322; 5 *Bing.* 1; 35 *Eng. C. L.* 1; 3 *New Hamp.* 190; 3 *Taunt.* 24.

2. As to whether the covenants extended to the acts of the Commonwealth. The construction of written contracts must be made by the Court in view of all the circumstances in evidence relating to the situation of the parties and of the subject thereof, showing with reference to what the contract was made: 3 *Stark. Ev., tit. Parol Ev.* 996; same 1021. The evidence of the con-

[Peters *v.* Grubb.]

struction of the Swatara feeder on the property by the state; the right to use the water claimed by the state agents, but never exercised, and denied by the lessors; and all the other evidence detailed by the Court in their charge on this part of the case, clearly show that the parties had in contemplation the claim of the state, and made the contract with a view to it.

In this case the entry of the Commonwealth upon the premises, and cutting off the whole of the water from the furnace, was a destruction of the beneficial enjoyment of the whole estate granted equivalent to an eviction: 6 *Bac. Abridg.* 49, *tit. Rent.* It seems extremely reasonable that if the use of the thing be entirely lost to the tenant, the rent ought to be abated: *Gilbert on Rents* 147–48. An eviction suspends rent: *Id.* 186.

The case of Dobbins *v.* Brown, 2 *Jones* 75, relied on by plaintiffs in error, decides that a covenant of general warranty is not broken by the entry and occupancy of the Commonwealth to construct a road or canal, in the exercise of its right of eminent domain; and so in Foote *v.* Cincinnati, 11 *Ohio Rep.* 408. But both these decisions proceed on the ground that such occupancy is not an eviction, and cannot be supposed to have been in contemplation of the parties. But at p. 80 of 2 *Jones,* Judge GIBSON explicitly declares that it might have been a breach *of a covenant for quiet enjoyment. Here there is a covenant for quiet enjoyment,* and we have endeavored to show that the exercise of the prerogative of the state was a breach of it in contemplation of the parties at the time. The case of Frost *v.* Earnest, 4 *Whar.* 86, is not inconsistent with the views presented. That case is put on the ground that the Act of Assembly under which the street was laid out over the demised premises, provided for the payment of damages as well to the tenant as to the landlord. The original entry was made upon the tenant. Here the *original* action of the state was when the feeder was constructed; and it must be presumed that a full compensation was allowed to the lessors or those under whom they claim. The *tenants* are therefore precluded from any claim upon the Commonwealth; and unless they can succeed in setting off the damages against the rent, they are without a remedy.

Courts of law and equity advert to the situation of the parties, &c., in order to enable them to construe ambiguous instruments: *Sug.* 118; 7 *Bro. P. C.* 745; 4 *Hen. & Mun.* 23.

Where the first covenant is *general,* a subsequent limited covenant will not restrain the generality of the first one: 1 *Mod.* 101; 1 *Saund.* 58; 3 *Bos. & Pul.* 565; 2 *Bing.* 506; 15 *East* 545; 3 *B. & Ad.* 189; 11 *East* 633.

When the subject of the grant or any part of it has been actually appropriated for public purposes at the time of the grant, it has become an existing right, the exercise of which is a breach

[Peters v. Grubb.]

of covenant against encumbrances on the part of the grantor: Kellog v. Ingersoll, 2 *Mass. Rep.* 97; Hubbard v. Norton, 10 *Conn.* 431; Pritchard v. Atkinson, 3 *N. Hamp.* 335; Herrick v. Moore, 1 *Appleton (Maine)* 313; and see case of Ellis v. Welch, 6 *Mass.* 246, cited by plaintiffs in error, which points out the distinction between a prior and subsequent appropriation by the public.

*Reply.*—It was said that nothing but an eviction under a paramount title will amount to a breach of the covenant for quiet enjoyment. If land be taken by statute for public purposes, such an eviction is not by reason of defect of title: 4 *Kent* 471. No argument can properly be founded on the supposition that John Gamber had no right to damages, and that therefore the lessees are without remedy; the claim to compensation is only *the benefit of a chance*, and therefore an ideal thing. GIBSON, J., 2 *Jones* 80. On the subject of the warranty reference was made to 3 *Law Lib.* 315.

The opinion of the Court was delivered, September 7, 1853, by

KNOX, J.—Upon a careful examination of this record, we are satisfied that the cause was properly tried by the Court below, and that the errors assigned have not been sustained. The covenant in the lease is alike for quiet enjoyment and of warranty, and must be held to embrace all existing antagonistical claims, whether upon the part of the Commonwealth or of private persons.

Had the original entry of the state, under her right of eminent domain, been subsequent to the date of the lease, the case of Dobbins v. Brown, 2 *Jones* 75, so much relied upon by the defendants, might have ruled this case in their favor. But such is not the fact. The works of the Commonwealth, for the purpose of drawing off the water to be used in feeding the canal, were erected as early as 1834, and from that time up to the date of the lease the canal commissioners and their subordinate officers claimed, and to some extent exercised the right of using the water when necessary for the public works. Gamber contested this claim, alleging that his was the better right to the exclusive use of the water. Under these circumstances it can scarcely be doubted, that the covenant in the lease for quiet enjoyment, was intended by the parties to protect against this claim upon the part of the Commonwealth.

After having received parol evidence to prove the time when the dispute commenced, and the acts and declarations of the parties in reference thereto, the judge below submitted the question to the jury to determine whether the parties to the lease had in view the claim of the state to interrupt the occupant in the use of the water, and made the contract with a view to that. If so, the Court was of the opinion, that the covenant for quiet enjoyment, in the

[*Peters v. Grubb.*]

lease, was broad enough to protect the tenant or his assignee, and to render the lessors responsible for the damages sustained by reason of such interruption.

The reception of the evidence to aid in the construction or interpretation of the lease, was clearly right; and if there was error in submitting to the jury the question of the intent of the parties, the defendants have no just cause of complaint, as, in the opinion of this Court, the intent might have been inferred as matter of law.

That the right to the water was demised needs neither argument or authority to demonstrate, as it was just as necessary to the enjoyment of the estate as the buildings or machinery.

It was likewise unnecessary to establish that the plaintiffs were evicted from the premises and wholly deprived of the use of the water. The covenant for quiet enjoyment was broken when a partial deprivation ensued from the lawful acts of a paramount claimant.

This view of the case disposes, substantially, of all of the assignments of error.

Judgment affirmed.

WOODWARD, J., and LOWRIE, J., dissented.