PABST BREWING CO. v. THORLEY.

(Circuit Court of Appeals, Second Circuit. April 18, 1906.)

No. 96.

**1. EMINENT DOMAIN—PROPERTY IN STREETS—CANCELLATION OF LICENSE.**

Where a city granted defendant permission to construct a vault in front of his premises within the street, subject to revocation at any time thereafter by the commissioner of highways when in his judgment the space occupied, or any portion thereof, should be required for any public improvements, or on any violation of any of the terms and conditions of the license, the termination thereof and the city's resumption of possession for the purpose of constructing a rapid transit railway in the street did not constitute a taking of the property by the exercise of the city's power of eminent domain.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 221.]

**2. COURTS—FEDERAL COURTS—RULES OF DECISION—REAL PROPERTY LAW— WHAT LAW GOVERNS.**

In an action for breach of a covenant of quiet enjoyment in a lease of property in New York City, whether the eviction was by virtue of the act of the holder of a paramount title, for whose acts defendant was responsible, was a question relating to the rights and title to real estate located in New York, and was determinable by the decisions of the courts of last resort of that state.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**3. LANDLORD AND TENANT—COVENANTS—QUIET ENJOYMENT—BREACH.**

Defendant, for the purpose of improving certain property by the erection of a hotel, obtained permission from the city of New York to construct a vault in the street in front thereof, subject to revocation when the space occupied was required for any public improvements. Defendant executed a lease to plaintiff, describing the land by metes and bounds "with the appurtenances thereunto belonging, together with the building now in course of erection," according to plans and specifications, and containing a covenant that on payment of the rent reserved the lessee should enjoy the demised premises without let, suit, trouble, or maintenance from the grantor or any other person. The property demised could not be used for the purposes intended without the vault, and prior to the termination of the lease the license to maintain such vault was canceled by the city, because the space was required for subway construction. *Held*, that the covenant covered the property held under the license, and that defendant was liable for a breach thereof.

In Error to the Circuit Court of the United States for the Southern District of New York.

Writ of error to review judgment of the United States Circuit Court for the Southern District of New York, sustaining demurrer to amended complaint, on the ground that it did not state facts sufficient to constitute a cause of action.

For opinion below, see 127 Fed. 439.

A. S. Gilbert, for plaintiff in error.

Joseph Fettretch, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. It appears from the amended complaint that the defendant, in January, 1899, being the lessee of a cer-

tain piece of land situated at the intersection of Forty-Second street, Broadway, and Seventh avenue, and having procured a permit from the city of New York to use the subsurface of the highway adjacent thereto, subject to revocation whenever such subsurface should be required for any public improvements, had erected a building upon the entire premises, and leased the land and building to the plaintiff for a term of about 19 years. The lease was of the land by metes and bounds—

"With the appurtenances thereunto belonging, together with the building now in course of erection upon said plot of ground, which said building is being erected and is to be erected in accordance with plans and specifications therefor heretofore submitted by the party of the first part to the party of the second part, and which said plans and specifications have been agreed upon by the parties hereto; such agreement being evidenced by their respective signatures upon the same."

The covenant in the lease was as follows:

"The said party of the first part doth covenant and agree to and with the party of the second part that, upon its paying the yearly rent above reserved and performing the covenants and agreements herein contained on its part, it shall and may at all times during the said term hereby granted peacefully and quietly have, hold, and enjoy the said demised premises, without any manner of let, suit, trouble, or hindrance of or from the party of the first part, his heirs, executors, administrators, or assigns, or any other person."

The material portions of the form of permit issued to defendant are as follows:

"Department of Highways, Borough of Manhattan, New York.

"No. ——. Permission is hereby given to ——— to construct a vault in front of premises known as ————————, used for ———; said vault to be ——— feet in width and ——— feet in length outside measurements. ———, and to occupy ——— square feet, subject to obligation to construct recess or chamber for existing hydrant or stopcock, as per annexed plan, and upon condition that the person or persons to whom this permit is granted will in all respects comply with the corporation ordinances relative to 'vaults, cisterns, and areas.' * * * This permit is issued subject to revocation at any time hereafter by the commissioner of highways when in his judgment the space occupied by said vault or any portion thereof may be required for any public improvements, or upon any violation of any of the terms or conditions hereof."

It further appeared that in April, 1902, the parties were notified by the city of New York that it would require the portion of the property below the highway for the Rapid Transit Railroad, and that thereafter the city revoked said permit, and took possession of said portion. The plaintiff, being thus actually evicted therefrom, abandoned the whole premises, and brought this action for damages for such eviction.

Under the original complaint it was argued, and upon the facts therein stated the court held, that the only question was whether the covenant protected the plaintiff against the exercise of the power of eminent domain. The court held that it did not, but said as follows:

"The argument for the plaintiff has assumed that at the time when the lease was made the defendant had an uncertain and determinable right to use the land owned by the city upon which a part of the building was constructed, and that the city could at any time revoke the license, and repossess itself of the property. If the complaint had set forth facts showing that the part of the premises owned by the city was at the time of the making of the

lease occupied by the defendant under some determinable title from the city which the city subsequently lawfully terminated, and that the city entered and evicted the plaintiff under its paramount right as owner, a different case would be presented. But such facts are not alleged, and the case presented depends upon the question whether the covenant protects the plaintiff against the exercise of the power of eminent domain. Reaching the conclusion that it does not, the demurrer is sustained."

The questions presented, as stated by plaintiff, are:

"Whether the action of the city in repossessing itself of the highway property which it had previously permitted the parties to this action to use was a taking under its right of eminent domain, or simply a retaking of property which rightfully belonged to it? If the taking was under its right of eminent domain, then the plaintiff cannot succeed upon this appeal, but if, on the other hand, the taking was, as we claim, not under its right of eminent domain, but under its title of paramount owner, then we respectfully submit to this court that the plaintiff must succeed upon this appeal."

That the city is the owner in fee of the subsurface portion; that defendant leased and plaintiff occupied said portion by virtue of a license or permit from the city; that the defendant had the right to make this covenant for quiet enjoyment; that the city had the right to revoke said license; that this revocation might be through the agency of the Rapid Transit Commission; and that said revocation resulted in an actual eviction from part, and a constructive eviction from all, of the premises—is admitted.

Defendant claims as follows:

"The eviction of plaintiff, if any, was pursuant to authority conferred by the Legislature in the exercise of the right of eminent domain. * * * A complete and perfect indemnity for plaintiff for all damage it has suffered by reason of the building of the subway has been provided in the legislative acts themselves."

Defendant further claims that the covenant for quiet enjoyment does not apply to land embraced within a highway; that it only covers the land leased and such rights as are appurtenant thereto, and that this mere license was not an appurtenance to the land leased; and that, as the demised premises are described by metes and bounds, the covenant does not apply to the portion outside thereof.

The argument as to eminent domain proceeds upon a misconception of the situation. If this were a case of taking by eminent domain, plaintiff would be remediless, because, as was said by the court below in its opinion on demurrer to the original complaint:

"The exercise of that right by the state is an incident of the tenure of all real property, and both of the parties to the deed or lease must be presumed to have taken it into consideration at the time. Brimmer v. City of Boston, 102 Mass. 19, 22; Folts v. Huntley, 7 Wend. (N. Y.) 210."

A taking by eminent domain is excepted from the operation of the covenant for quiet enjoyment, because, furthermore, it is an exercise of the sovereign power of the state in acquiring title to property according to the constitutional injunction of compensating every man whose property is taken for the public use. If such taking were to be held to be a breach of the covenant, the covenantee would be entitled to be paid the value of his loss by the party evicting him, and might also recover from his covenantor for breach of the covenant. Frost v.

Earnest, 4 Whart. (Pa.) 86, 90; Folts v. Huntley, 7 Wend. (N. Y.) 210. But here there was no exercise of sovereign power. The city, having the title and the right to possession upon the happening of a certain contingency, has merely exercised its right to terminate the license and resume possession. There is no taking of title, no acquisition of property, no obligation arising out of the lawful resumption of possession to make compensation for any loss, because the loss is a damnum absque injuria, the result of the action of the city, provided for by it in its permit, and assented to by the defendant when he obtained the license. The argument, therefore, based upon the provisions of the Rapid Transit Acts, for compensation to owners of property taken or extinguished for the purpose named in the act, has no bearing on the issues herein.

The question here at issue was suggested by Judge WALLACE in his opinion disposing of the case on demurrer to the original complaint, where, as stated above, he said as follows:

"If the complaint had set forth facts showing that the part of the premises owned by the city was at the time of the making of the lease occupied by the defendant under some determinable title from the city, which the city subsequently lawfully terminated, and that the city entered and evicted the plaintiff under its paramount right as owner, a different case would be presented."

In the view which we have taken it is immaterial whether there is a distinction between a determinable right and a determinable title. The decision in McLarren v. Spalding, 2 Cal. 510, cited by the court in its opinion on the demurrer to the amended complaint, and chiefly relied on by counsel for the appellee, is only remotely relevant to the issue herein, for the reason that there was there no covenant for quiet enjoyment. The single question here is whether the eviction was by virtue of the act of a holder of a paramount title, for whose acts this defendant should be held responsible. Inasmuch as the question presented relates to the rights and title to real estate and things having permanent locality, it is to be determined by the decisions of the courts of last resort of the state of New York, so far as they determine the questions herein. Swift v. Tyson, 16 Pet. (U. S.) 1, 10 L. Ed. 865; Baltimore & Ohio Railroad v. Baugh, 149 U. S. 368, 372, 13 Sup. Ct. 914, 37 L. Ed. 772; Van Etten v. Westport (D. C.) 60 Fed. 579.

The argument of defendant that the covenant for quiet enjoyment does not apply to land embraced within a public highway has no application to the facts of this case. The defendant cites Wilson v. Cochran, 46 Pa. 229, and quotes from the opinion therein. But he fails to show that in the next paragraph of the opinion the court expressly disapproves the doctrine quoted, and refers to the case from which it is taken as an "ill-considered case." See, also, Rawle on Covenants for Title, § 79, note 1. So far as the Pennsylvania cases cited hold that the existence of an easement consisting of a highway is no breach of the covenant, they merely illustrate the exception to the general rule pointed out in Huyck v. Andrews, 113 N. Y. 81, 20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432. There, the court, referring to the reasons given by the court in Whitbeck v. Cook, 15 Johns. (N. Y.) 483, 8 Am. Dec. 272, why in such a case the purchaser has no ground to

complain "of the existence of what he saw when he purchased, and what must have enhanced the value of the farm," says:

"These reasons are not applicable to other easements, and the rule of that case has not been applied to any other."

The court then discusses and cites with approval a number of cases holding that the existence and exercise of private rights constitute a breach of covenant against incumbrances or for quiet enjoyment, irrespective of whether the covenantee knew of them or not, and, citing and expressly disapproving the decisions which hold to the contrary, says as follows:

"We think the safer rule is to hold that the covenants in a deed to protect the grantee against every adverse right, interest, or dominion over the land, and that he may rely upon them for his security. If open, visible, and notorious easements are to be excepted from the operation of covenants, * * * it should be incumbent upon the grantor, if he does not intend to covenant against such defects and incumbrances, to except them from the operation of his covenants."

The opinion of Judge, now Mr. Justice Brewer in Barlow v. Delaney (C. C.) 40 Fed. 97, is to the same effect.

In Hymes v. Estey, 133 N. Y. 342, 31 N. E. 105, the court, referring to its former decision in the same case, said as follows:

"It was held that the case was taken out of the ordinary rule that the existence of a public highway at the time of the conveyance of lands with covenant for quiet enjoyment or against incumbrances is not a breach of such covenant. It was there declared that such rule was limited to cases where the public easement was open and visible and in actual use, and had no application to cases like the present, where, if the plaintiff's contention is true, there was at the time of the purchase no indication of the existence of a highway. That decision proceeded upon sound and just principles, and we see no occasion to restrict or modify it in any respect."

In the former decision in Hymes v. Estey, 116 N. Y. 501, 22 N. E. 1087, 15 Am. St. Rep. 421, the court had said that the exemption from the warranty in the case of a public highway rested upon the motion derived from its apparent existence or use, because the grantee gets all the rights which, in view of the apparent situation, the deed purports to convey; but that without such notice it cannot be said that the purchaser gets "all the proprietary right in the premises which he is permitted to assume was assured to him by the covenant of his grantor." The same view is taken in the decision in Wilson v. Cochran, supra.

The subsurface in the case at bar is neither within the definition nor reasoning of the court in these cases. It was not technically or actually a public highway. It was not used or adapted to be used as a public highway, and, except under the extraordinary exigencies of subway construction, it could not have been used for that purpose. Under the sidewalk there was no highway, either "open, visible, or in actual use," or even in existence. On the contrary, although the plaintiff knew that the city was the owner of the portion of land leased to him under the public highway, he knew that it was closed and occupied by a portion of the building leased to him by defendant, under a permit from the city, which deprived the city of all right to its actual

use until either it was "required for any public improvements, or upon any violation of any of the terms or conditions thereof." The questions of eminent domain and of notice of sovereign rights by reason of the existence of a highway as an incumbrance upon an estate may therefore be eliminated from the case.

It is further argued that the covenant for quiet enjoyment is limited to the land leased or some portion thereof, or to rights appurtenant thereto, and that, as this subsurface was held under a mere determinable license or right which was not an appurtenance of the land, the covenant does not apply thereto. A person who is lawfully dispossessed by reason of want of title is evicted by title paramount. Day v. Chism, 10 Wheat. 449, 6 L. Ed. 363; 8 American & English Encyclopædia of Law (2d Ed.) 102.

"It may be stated as a general rule that any right which, commencing before the deed, is not passed by, but exists independently of the conveyance, and can be asserted with the effect of rightfully evicting the tenant under the deed, is a superior or paramount right. The legal implication of the covenant for quiet enjoyment is that the landlord has an adequate title to the estate created by the lease, and that he will permit the tenant to enjoy, without disturbance or interruption, the interest, title, or privilege demised, subject to all such rights as are expressly or by natural implication reserved to the lessor." Jones on Landlord and Tenant, § 352.

"The covenants of warranty and for quiet enjoyment extend to everything that is appurtenant or incident to the grant to which they relate, and are broken by the loss of any incorporeal right annexed or incident to the land conveyed. In order that the loss of such a right may amount to a breach of these covenants, it must, however, appear that it was a legal appurtenance to the land within the meaning of the deed." 8 American & English Encyclopædia of Law (2d. Ed.) 121.

The general rule which determines the character and extent of the covenant of warranty as applied to rights and licenses relating thereto is well illustrated by the following decisions:

In Green v. Collins, 86 N. Y. 246, 40 Am. Rep. 531, the defendant sold to plaintiff a dwelling house "with the appurtenances," the deed containing a covenant for quiet enjoyment. There was a water-closet in the dwelling, the discharge pipe from which emptied through pipes into a sewer on the adjoining premises, owned by a third party. Defendant had no right to use this sewer, and the third party, after the conveyance, obtained an injunction restraining the plaintiff from using it. Plaintiff having sued defendant for breach of warranty, the court held that the action was not maintainable, and said as follows:

"The language of the deed, of itself, does not convey to the plaintiff a right to use her premises in such manner as would create a nuisance upon the land of the adjoining proprietor. The words 'with the appurtenances' cannot affect the rights of the parties, or enlarge the scope of the deed, as the appurtenances would pass without such words; for it is a general rule that whatever is in use for the land as an incident or appurtenance is conveyed by the deed. Huttemeier v. Albro, 18 N. Y. 48. If the right of the defendant to use the adjoining land was an easement attached to or constituting a part of the

land, it was transferred by the deed. Such right did not exist, however, in fact, and therefore it could not and did not pass to the plaintiff. * * * The right to drain upon the adjoining land would, at least to some extent, involve a right to inflict a burden which, unless protected or provided for, might constitute a nuisance, and such a result cannot be accomplished without proof of the existence of the right claimed, or express words showing that it was the intention of the grantor to confer it. And, although an existing easement, as a matter of legal right, passes with the thing granted, yet, where a grantor conveys without any interest or title whatever, an easement does not pass to the grantee."

In Adams v. Conover, 87 N. Y. 422, 428, 41 Am. Rep. 381, defendant conveyed to plaintiff certain premises, including within its bounds a mill and dam with sufficient water power, with covenant for quiet enjoyment. The plaintiff was compelled to tear down the dam, because the water flooded adjoining property. The court held that thereby plaintiff was evicted by paramount title from the right to use said water power as it existed at the time of the conveyance, and that this was a breach of the covenant of warranty, and said as follows:

"The case, therefore, does not come within the rule of Green v. Collins, nor is it like Burke v. Nichols, 2 Keyes (N. Y.) 670. In neither of these cases was the grantee evicted from anything which passed by the grant. That plain line of distinction separates both from a case like the present, where the thing lost was covered by the conveyance, and embraced within its description, and the deed both conveyed, and, as we construe it, purported to convey, the identical thing destroyed by a paramount title. The justice of the rule is entirely clear. It does not permit the vendor of an apparent water power to get a price for what he does not own, or indulge him in a palpable fraud upon his vendee. It rests upon the general principle that the covenants in a deed are designed to protect the grantee in the enjoyment of his property, in the manner and for the particular purpose intended by the parties at the time of executing the deed. Comstock v. Johnson, 46 N. Y. 615; Voorhees v. Burchard, 55 N. Y. 102."

In Scriver v. Smith, 100 N. Y. 471, 3 N. E. 675, 53 Am. Rep. 224, the court says:

"Suppose one takes a deed with a covenant for quiet enjoyment of land with a house thereon. * * * If, in the case supposed, the house is three stories high, and in consequence of covenants with adjoining landowners there is no right to maintain more than two stories, so that the grantee is obliged to remove the third story, would there not be a dispossession and eviction of so much of the premises conveyed, and thus a breach of the covenant?"

See, also, Peters v. Grubb, 21 Pa. 455; Mayor of New York v. Mabie, 13 N. Y. 151, 64 Am. Dec. 538; Cronkhite v. Cronkhite, 94 N. Y. 323; Spencer v. Kilmer, 151 N. Y. 390, 45 N. E. 865; Burke v. Tindale, 12 Misc. Rep. 31, 33 N. Y. Supp. 20; affirmed 155 N. Y. 673, 49 N. E. 1094; Uihlein v. Matthews, 172 N. Y. 154, 64 N. E. 792; Kramer v. Carter, 136 Mass. 504.

Bearing in mind the distinction indicated in these decisions, we are brought to a consideration of the scope of the warranty in the case at bar. This question is to be determined by the construction of the lease and the intention of the parties as shown therein. But the defendant not only leased said land, but also—

"The building now in course of erection upon said plot of ground, which said building is being erected in accordance with plans and specifications therefore heretofore submitted by the party of the first part to the party of

the second part, and which said plans and specifications have been agreed upon by the parties hereto; such agreement being evidenced by their respective signatures upon the same."

The covenant for quiet enjoyment covered, in terms, the whole of said leased property.

The demurrer admits the following allegations of the complaint:

"That for the purpose of using said premises for a hotel, café, and restaurant, as hereinbefore stated, there was laid out upon the plans and specifications, and, pursuant thereto, was constructed in the cellar floor of the premises leased to the plaintiff, and particularly in the portion thereof which was built and constructed outside of the house line, and extending to the curb line of Broadway, Forty-Second street, and Seventh avenue, pursuant to said license or permit, certain refrigerating and ice plants, hot water supply and pump rooms, engine rooms, boiler rooms, engines, wine rooms, ice box, store rooms, and closets. * * * That the said building, so leased to this plaintiff by this defendant, as aforesaid, could not be used for the purpose for which it was designed, and in the manner designed, to wit, as a hotel, café, and restaurant, after taking away that portion thereof used or to be used for the purposes of the Rapid Transit Railway."

That, as already shown, plaintiff expended large sums of money in fitting up the building leased, relying upon the covenants of defendant, and with his knowledge and consent. The demurrer, therefore, admits that the property leased did in fact include the portion taken, the lease being not only of the land described by metes and bounds within the portion taken, but also of the building to be erected in accordance with plans agreed upon by the parties, and that the building so constructed did in fact cover, not only the land described by metes and bounds, but also the land not so described, and which was taken by the city.

In these circumstances, we think the lease must be construed as a lease of the building as a whole, and that therefore the covenant for quiet enjoyment applied to the part thereof which was constructed under the highway. If the words of the lease describing the building as being erected in accordance with agreed plans and specifications, which plans and specifications covered the subsurface of the highway, are to prevail, then the portion of the building occupying the subsurface of the highway was a portion of the demised premises. But it may, perhaps, be argued that the words in the lease referring to the building as one "now in course of erection upon said plot of ground" limit it to the plot by metes and bounds, and that, therefore, the covenant for quiet enjoyment does not apply, because such a mere license to use property outside of the plot either is not an appurtenant to the land, or, even if appurtenant, is only so until revoked, and no right is transferred by the lease. The objections to such a construction have been already pointed out. It may be true that a covenant for quiet enjoyment does not necessarily cover a mere easement in property not comprehended within the limits of the property leased, and in which the vendor or lessor has no right or interest, because in such cases there is nothing to be granted or leased. But, as-suming the correctness of the assumption that the covenant may be limited to the land exclusive of the building, the case is one where a lessor, having a present interest in property occupied by him under a

license, has entered into a covenant, which is capable of a construction which might or might not have included the portion held by virtue of said license, and has elected to erect a building on said portion, and has leased the whole for a term of years to the plaintiff, with a general covenant for quiet enjoyment. Said building could only be occupied by the plaintiff for the purposes for which it was designed by the use of the licensed portion. In these circumstances, upon the construction most favorable to the plaintiff, there is an ambiguity in the lease, which must be resolved by determining the intention of the parties, if possible, from all the terms of the lease, from the situation of the parties, the objects they respectively had in view, and the acts done in pursuance of the contract. That the parties understood that the covenant applied to the whole building leased appears from the following facts: The lease was for a term of about 20 years, for an annual rent of $25,000, without any provision for apportionment in case of eviction from any portion of the leased property. The building was so constructed upon the whole property in accordance with agreed plans that it could be used for the purposes for which it was designed only in its entirety; the construction and fixtures in the subsurface portion being a necessary part of the complete plant. The plaintiff, relying on the covenant of defendant, expended large sums of money in fitting up the building. There was, furthermore, no provision for the protection of the defendant from liability in case of an eviction. As was said in McLarren v. Spalding, supra, the case chiefly relied on by defendant:

"The defendant here might have protected himself by a clause defeating the lease in case of the removal of the stand; and, as he knew that it was subject to removal, and did not do so, the presumption is that he assumed the risk, and must bear the loss."

We are brought, then, to the question whether the covenant herein covers the property held under the license. Whether the defendant would have been liable for the eviction in the absence of any such covenant is a question which is not before us, and as to which we express no opinion.

Here, the eviction was by the covenantor's licensor, the one through whom the covenantor acquired such right of occupancy as he undertook to lease to the plaintiff, and as to which he made the covenant, upon the faith of which the lessee entered, occupied, and improved the leased property.

Upon the facts admitted by this demurrer, we think it is clear, therefore, that the parties understood that this was a covenant for quiet enjoyment against eviction by the city or its representatives. The covenant, in terms, was a warranty against the acts of any other person. The lessor derived his sole right to the occupancy of these premises from the city, and therefore might reasonably be presumed to warrant against the lawful acts of his own licensor. The plaintiff must have understood this covenant to apply to the enjoyment of the property beneath the highway, or otherwise he would not have taken a lease of the property for 19 years. If there might otherwise be any question as to the understanding of the plaintiff, there can be none

when it is admitted that under said lease, and relying on said covenant, he went ahead and personally expended a large sum of money in fitting up the premises.

In these circumstances, we think this question must be determined by the ordinary principles applicable to the construction of a written instrument. As already shown, the demurrer admits that the leased building, constructed pursuant to plans and specifications agreed upon between the parties, was built in part below the public highway on land held under a license; that, pursuant to said license and permit, certain refrigerating plants, hot water supply and pumping rooms, engine rooms, boiler rooms, engines, etc., were constructed under the highway, for the purpose of using the whole premises for a hotel, café, and restaurant; that the rent to be paid was a total sum, without any provision for apportionment in case any portion of the property should be rendered unavailable; that the portion of the highway thus occupied by the building was a substantial and important part thereof, and that the building could not be used for the purpose for which it was designed without said portion; and that the plaintiff—

"Relying upon the covenants of the defendant above set forth, and with the knowledge and consent of this defendant, and for the purpose of making the said premises better adapted to the use for which it was designed, to wit, as a hotel, restaurant, and café, this plaintiff expended large sums of money in improving and decorating the building so leased to it as aforesaid by this defendant, and expended large sums of money in the purchase of fixtures, furnishings, and appurtenances for the improvement and decoration of said building, all of which improvements, fixtures, decorations, and appurtenances are and have become useless and valueless to this plaintiff in connection with the use and enjoyment of said premises by reason of the eviction of this plaintiff from the said building and premises, as aforesaid."

The lease was tendered by the lessor and accepted by the lessee, and, in case of doubt, the construction contra proferentem is to be adopted. Charles River Bridge v. Warren Bridge, 11 Pet. (U. S.) 420, 9 L. Ed. 773, 938; Folts v. Huntley, supra.

We conclude that the covenant of the grantor must be construed to extend to and to cover the whole of the leased building as an entirety, including the portion constructed on the land under the public highway.

The decision of the court below is reversed, and the case is remanded to the court below, with instructions to enter an order in accordance with this opinion, with leave to the defendant to answer over.