PARKER, Ch. J., O'BRIEN, MARTIN, VANN, CULLEN, JJ. (and GRAY, J., in result), concur.

Judgment affirmed.

AUGUST UIHLEIN et al., Respondents, *v.* MARGARET MATTHEWS, Appellant, Impleaded with Others.

EVIDENCE — RESTRICTION AS TO USE OF PREMISES FOR A ·SALOON WHEN REMOVED BY QUITCLAIM DEED — ACTS AND CONVERSATIONS OF PARTIES INADMISSIBLE TO CONTRADICT DEED. Where the owner of a building by an instrument in writing conveyed three inches of land with the right to use his party wall to an adjoining owner in consideration of a covenant by the latter, stipulated to run with the land, that she would not during a specified time use a building to be erected by her for a saloon, and a dispute having arisen as to the title to a portion of her lot, the grantor, for a consideration, subsequently executed and delivered to her a quitclaim deed of her entire lot, including that portion in dispute, with no reservation or exception whatever as to the restriction, the effect of the deed is to annul it, and evidence of the acts and conversations of the parties prior to the delivery of the quitclaim deed, in order to show that it was not intended thereby to release or affect the restriction, is inadmissible.

*Uihlein* v. *Matthews*, 57 App. Div. 476, reversed.

(Argued June 19, 1902; decided October 7, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 1, 1901, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George E. Milliman* for appellant. It was error to admit parol evidence of what preceded the giving of the deed and

of the intention of the parties. (*McCluskey* v. *Cromwell*, 11 N. Y. 593; *Thomas* v. *Scutt*, 127 N. Y. 133; *Moneypenny* v. *Moneypenny*, 9 Hoff. 146; Devlin on Deeds, 837; *Holmes* v. *Hall*, 8 Mich. 66; *Brunhild* v. *Freeman*, 77 N. C. 128; *Green* v. *Collins*, 86 N. Y. 246; *Bates* v. *Virolet*, 33 App. Div. 436.) The deed and the contract released the land of the appellant from the restrictions relating to the sale of liquor contained in the contract of May fourth, and that contract was not reaffirmed by the reference contained in the agreement of November seventh. (Jones on Real Property, § 209; 9 Am. & Eng. Ency. of Law [2d ed.], 105; 20 Am. & Eng. Ency. of Law [1st ed.], 735; 10 Am. & Eng. Ency of Law [2d ed.], 432; *Hamilton* v. *Farrar*, 128 Mass. 492; *Sidwell* v. *Greig*, 17 Misc. Rep. 165; *Bradley* v. *Walker*, 138 N. Y. 291; *Flatten* v. *Morehead City*, 58 Minn. 324; *Bradley* v. *Spruck*, 27 Ill. 478; *Morgan* v. *Clayton*, 61 Ill. 35; *Short* v. *Van Dyke*, 50 Minn. 286; *Hopkins* v. *Rogers*, 3 Yerg. 457; *Riley* v. *City of Brooklyn*, 46 N. Y. 444; *House* v. *Walch*, 144 N. Y. 418.)

*Scott Cummings* for respondents. The defendants were bound by the covenant in the contract which has never been released. (*Bradley* v. *Walker*, 138 N. Y. 291; *Snow* v. *Tifft*, 15 Johns. 458; *Craig* v. *Wills*, 11 N. Y. 315; 2 Devlin on Deeds, § 856.) The parol evidence was properly received. (Gerard on Titles, 303; *Coleman* v. *Brock*, 97 N. Y. 545; Jones on Real Property, § 744.)

O'BRIEN, J. The judgment in this action awarded a permanent injunction against the defendant, restraining her from using or permitting the use of her premises as a place for the sale of ales, beers, wines and liquors, for the period of five years from May 4, 1898. The facts upon which the judgment rests were found by the trial court and appear fully in the record without dispute, and, hence, the appeal presents the question whether the judgment is sustained by the conceded and undisputed facts. The defendant owns a block or

building adjoining the plaintiffs. The premises of the latter are occupied as a saloon kept by the plaintiff McManus as the tenant of his co-plaintiff. He formerly owned the premises so occupied by him, as well as the land upon which the defendant's building now stands, but a short time before the commencement of this action he conveyed the premises where his saloon now is to his co-plaintiff, continuing, however, the saloon business at the same place under a lease from Uihlein. The defendant having recently erected a building upon her lot adjoining the plaintiffs' leased it to be used as a saloon or place for the sale of ales and liquors. The courts below have enjoined such use of the defendant's premises as in violation of a covenant on her part with McManus. This judgment is in accordance with the theory of the action and the prayer of the plaintiffs' complaint. The defendant contends that no such covenant existed or was in force at the time of the commencement of the action, and this contention involves the construction and legal effect of certain conveyances between the parties.

On the 4th day of May, 1898, the defendant being about to erect a building on her adjoining lot, agreed with McManus, who then owned the property now held by the plaintiffs, for the conveyance to her of three inches of land east of the line of his building for her party wall. On that day a written instrument was executed which conveyed the three inches to the defendant and it was duly recorded the next day. In this conveyance, which was also executed by the defendant, she covenanted and agreed with McManus, the grantor, that "she would not use or permit to be used the building to be erected by her upon her said property as a saloon and restaurant, or as a place for the sale of ales, beers, wines and liquors for the period of five years from the date of said instrument." The courts below have held that this was a valid restriction upon the use of the defendant's property, made upon an adequate consideration and binding upon her. If the restriction was not removed by the subsequent acts and conduct of the parties that conclusion would not be open to question.

The defendant having erected her building applied for a loan thereon, when it was found that there was included in her lot a strip of land about two and a half feet wide as to which there was some defect in regard to the title, and it is found that it became a matter of dispute as to whether the defendant or McManus had the title. The latter refused to settle the dispute by a release or otherwise for some time, and in the end exacted from the defendant $125 for his claim, if any. On the 28th day of September, 1898, McManus and his wife executed and delivered to the defendant a quitclaim deed of her entire lot by metes and bounds, including the two and a half feet in dispute, whereby the grantor conveyed to the defendant the land " with all and singular the hereditaments and appurtenances thereto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever; of the said party of the first part, either in law or equity, of, in and to the above bargained premises, with the said hereditaments and appurtenances, to have and to hold the said described lands and premises to the said party of the second part, her heirs and assigns, to the sole and only proper benefit and behoof of the said party of the second part, her heirs and assigns forever." This deed was recorded on the 11th day of November, 1898. On the 7th day of November, 1898, the parties entered into another agreement which had all the effect of a conveyance and was recorded November 17th, 1898, but the only purpose of that instrument was to allow the defendant to extend her building and the west wall thereof about two feet beyond the front of plaintiffs' building or to the line of the street. It enlarged the defendant's rights, and in no respect did it restrict her in the use of her property. The two instruments conveying to the defendant the right to maintain her party wall expressly provided that the rights and covenants therein provided for should run with the land, and although nothing on that subject is mentioned in the quitclaim deed, yet, in the absence of some

words of limitation, that form of conveyance carries to the grantee the benefit of all covenants running with the land. (Devlin on Deeds, sec. 849.; *Jenks* v. *Quinn*, 137 N. Y. 223; *Brady* v. *Spurck*, 27 Ill. 478; *Morgan* v. *Clayton*, 61 Ill. 35.)

It cannot be doubted that the agreement between the parties which contains the restriction in question created an easement in favor of the plaintiffs and their land and imposed a servitude upon the defendant's property. The right which the plaintiffs thus acquired to restrict the use of the defendant's property is sometimes called a negative easement, which is the right in the owner of the dominant tenement to restrict the owner of the servient tenement in the exercise of general and natural rights of property. (*Pitkin* v. *L. I. R. R. Co.*, 2 Barb. Ch. 221; *Day* v. *N. Y. C. R. R. Co.*, 31 Barb. 548; 2 Wash. on Real Prop. [5th ed.] 314.) The servitude thus imposed upon the defendant's property was in every legal sense an incumbrance and an interest in lands which could pass only by deed. (*Huyck* v. *Andrews*, 113 N. Y. 81.) The sole question in this case is whether this easement in favor of the plaintiffs and servitude upon the defendant could survive the broad terms of the plaintiffs' grant to the defendant, made several months after the servitude was imposed. That grant conveyed to the defendant every possible right, interest or claim that the grantor had or could assert against the premises, in law or equity. The plain legal effect of that deed was to release or annul the restriction in favor of the grantor against the property. The continued existence of the servitude would be inconsistent with the terms of the grant and contradictory of its entire scope and meaning, and so we think that upon the delivery of that deed the easement and servitude ceased to exist. It ceased to exist as to both of the plaintiffs since the deed from McManus to Uihlein was made subsequent to the time when the prior conveyances referred to had taken effect.

The plaintiffs were permitted, against the defendant's objection and exception, to prove the acts and conversation of the parties prior to the delivery of the quitclaim deed to the

defendant, in order to show that it was not intended by that conveyance to release or otherwise affect the restriction upon the use of defendant's property contained in the prior agreement in regard to the party wall. The precise question is whether a person who has an interest in the real property of his next neighbor in the nature of an easement, and who conveys absolutely, without any exception or reservation of such easement, can afterwards be permitted, in an action to enforce the right involved in the easement, to show by parol that he intended to retain it, notwithstanding his deed. We think that the testimony was inadmissible. The deed in terms, as we have seen, purported to convey all the right, title and interest of the grantor. The language employed necessarily included any easement that the grantor had or claimed with respect to the premises conveyed, and it was not competent to show by parol evidence that the easement was reserved or excepted. It was a violation of the rule which excludes such evidence to vary, explain or contradict a written instrument that was complete in itself and without ambiguity in its terms. The legal effect of the deed upon the prior easement was to be determined upon the words embodied in the conveyance, and not with reference to what the grantor thought or understood. When words have a definite and precise meaning, it is not permissible to go elsewhere in search of conjecture in order to restrict or extend the meaning. That deeds or other written instruments cannot be varied, enlarged or restricted by evidence of that character appears from the words of the statute and the general consensus of authority. (Chap. 547, Laws of 1896, sec. 205 ; *Armstrong* v. *Lake Champlain Granite Co.*, 147 N. Y. 495 ; *McCluskey* v. *Cromwell*, 11 N. Y. 601 ; *Green* v. *Collins*, 86 N. Y. 254 ; *Thomas* v. *Scutt*, 127 N. Y. 133–138 ; *Case* v. *Phœnix Bridge Co.*, 134 N. Y. 78 ; *Englehorn* v. *Reitlinger*, 122 N. Y. 76 ; *House* v. *Walch*, 144 N. Y. 418 ; Devlin on Deeds, sec. 837.) It follows that all parol evidence tending to show that, notwithstanding the clear and comprehensive words of the quitclaim deed, the grantor therein still retained the right to restrict the

grantee in the use of the property conveyed should have been excluded. If in consequence of fraud or mutual mistake the deed conveyed more than the parties intended it was subject to reformation in equity, but no facts have been found to justify any relief of that kind. This is an action projected upon the theory that the servitude imposed upon the defendant's property by the party wall agreement remained in force after the plaintiff had conveyed the premises. Moreover there is nothing in the record that tends to show that the defendant ever intended to pay to the plaintiff a considerable sum of money for a deed of all his interest in her property and at the same time leave an outstanding incumbrance in the grantor that affected her title. In the absence of clear proof to the contrary the natural and reasonable construction to be placed upon her acts and conduct would be that her intention was to procure a title clear and absolute, that she could mortgage or convey in the same way as she could if the restriction in question had never been imposed upon her land. This conclusion is not qualified or affected by the last or supplementary writing in regard to the party wall. That paper, as already observed, enlarged the defendant's rights by allowing her to extend her wall to the street line. The very fact that it did not impose any restriction or by any form of words attempt to revive what was extinguished by the deed tends rather to confirm than to weaken the general effect of that conveyance upon the easement as indicated in the principles herein stated. .

The judgment should be reversed, and a new trial granted, costs to abide the event.

Bartlett, J. (dissenting). I am of opinion that the Appellate Division reached a proper conclusion and that the judgment should be affirmed.

A clear statement of the facts is essential to an understanding of the questions presented by this appeal. For several years prior to the month of January, 1899, the plaintiff, McManus, owned the premises situate in the city of Rochester known as No. 161 West avenue, and occupied the same

as a saloon and restaurant; West avenue runs east and west. These premises were eighteen feet wide and one hundred feet deep.

The defendant, Margaret Matthews, was the owner of a vacant lot fourteen feet in width and about one hundred feet in depth on the east side of and adjoining the premises of McManus.

The defendant Matthews, being desirous of erecting a brick building on her lot, entered into negotiations with McManus for the purchase from him of three inches of land included in his premises and east of the east wall of his building thereon; and also for the use of the east wall of the McManus building as a party wall; that thereafter and on the fourth day of May, 1898, pursuant to such negotiations, said agreement was entered into, and in consideration thereof the defendant Matthews covenanted and agreed with the plaintiff McManus that "she would not use or permit to be used the building to be erected by her upon her said property * * * as a saloon and restaurant, or as a place for the sale of ales, beers, wines and liquors, for the period of five years from the date of said instrument." It was further agreed that these covenants should run with the land.

There is no finding that McManus owned any land east of his east wall except the three inches here conveyed, and his testimony shows that he never made any claim that he did.

It is further found that after the defendant Matthews had erected her building she applied for a loan, and it was then discovered that within the bounds of her lot there was a strip of land about two and one-half feet in width and extending the length of the lot which was apparently not covered by her deeds, and it was a matter of dispute between herself and the plaintiff McManus as to the ownership thereof. (There is no claim that McManus was her original source of title.) That thereafter, and in the early part of November, 1898, McManus and wife, for the purpose of settling such controversy, for a valuable consideration, gave the defendant Matthews a quitclaim deed of all his interest in said land; that

11

contemporaneous with the delivery of such quitclaim deed, and as a part of the same transaction, McManus and defendant Matthews entered into a written contract recognizing and continuing the former contract made by them and dated the 4th day of May, 1898. This quitclaim deed is in evidence.

It is to be borne in mind that the total width of the Matthews lot was only fourteen feet, and yet this quitclaim deed purports to convey all the lands from the center of McManus' east wall to Julia street, a distance of about forty-four feet. The thirty feet east of the land that the defendant Matthews owned McManus never claimed to own, nor had he any title to the Matthews lot.

The real situation is clearly disclosed by the findings and the evidence. The defendant Matthews having applied for a loan, was advised that within the bounds of her lot there was a strip of land about two and one-half feet in width and extending the depth of it, which was apparently not covered by the deeds. Neither the findings nor the evidence locates this two and one-half feet strip, and it is evident that the searcher of the title had some difficulty, as is often the case, in locating the various lots west of Julia street on West avenue, including those of Matthews and McManus. In order to correct any difficulty regarding this unlocated strip of land, McManus, for a consideration, was induced to execute a quitclaim deed of all the land lying between his east line as bounded by the party wall and Julia street, although making no claim of title.

The findings and the evidence make it plain that the sole object of this quitclaim deed was to correct this alleged defect in Matthews' title.

It is expressly found that as a part of the same transaction, a written contract was executed between the parties continuing the former contract and conveyance of May 4th, 1898. These two contracts are in evidence, and the latter not only continued in force the agreement of May 4th, 1898, as stated, but provided that Matthews having erected a brick building upon her land, extending the west wall thereof about two feet

beyond the front wall of McManus' building to the line of the street, .that the agreement of May 4th, 1898, should apply to the entire west wall as erected, and conferring upon each party the right to use the extension as a party wall.

McManus and wife, in January, 1899, conveyed to the plaintiff Uihleen who afterwards leased the premises to McManus, and the latter continued to conduct on the premises a saloon and restaurant. The defendants O'Hara and Murphy were copartners, and about the first of July, 1899, with knowledge of the covenant entered into by Matthews, in which she agreed not to use her building for the sale of liquors, etc., for the period of five years from May 4th, 1898, opened and conducted a saloon and restaurant upon the Matthews premises in alleged violation of this covenant.

This action seeks to enforce the covenant and restrain O'Hara and Murphy from conducting said business.

The complaint also prays for damages and for a reformation of the quitclaim deed, if it be found that the legal construction thereof was to render of no force or effect the covenant in the agreement and conveyance of May 4th, 1898.

While it is the general rule that deeds or other instruments cannot be varied, enlarged or restricted by parol evidence, yet there are many and well-established exceptions thereto. A familiar example is found in that power which has always been exercised by a court of equity to declare a conveyance which is absolute upon its face a mortgage.

In the first place, we have read into this quitclaim deed the agreement of May 4th, 1898, which includes the very covenant in question ; also the subsequent agreement executed contemporaneously with the quitclaim deed, the two constituting one transaction.

It would seem to go without saying that a court of equity, under the undisputed facts here disclosed, has the power to examine all the written instruments and, in the light of their provisions and the testimony of the parties interested, determine the exact nature of this transaction and the effect of the various conveyances and contracts.

It is disclosed that during the negotiations resulting in the quitclaim deed it was not suggested that the execution and delivery of the latter had any other object than to correct · the alleged cloud upon the defendant Matthews' title to the strip of land in question.

The appellant's contention that it was error to admit parol evidence of what preceded the giving of the quitclaim deed and of the intention of the parties ought not to be sustained.

In *Stow* v. *Tifft* (15 Johns. 458) the general principle is laid down that where two instruments relating to the same subject are executed at the same time, they are to be taken in connection as forming parts of the same agreement.

It is expressly found that the defendants O'Hara and Murphy opened their saloon and restaurant upon the Matthews premises with full knowledge of this covenant in the agreement of May 4th, 1898.

In *Tallmadge* v. *East River Bank* (26 N. Y. 105) it is held that the owner of land may by parol contract, with the purchasers of successive parcels, in respect of the manner of its improvement and occupation, affect the remaining parcels with an equity requiring them also to be occupied in conformity to the general plan, which is binding upon a subsequent purchaser with notice of the fact, though his legal title be absolute and unrestricted.

In *Collins* v. *Tillou* (26 Conn. 368) it is held that the purpose of an ordinary deed of land is not to state the terms of the contract, in pursuance of which the land is conveyed, but to pass the title; and notwithstanding the formal statement of consideration, and of the receipt thereof contained in the deed, the grantor is at liberty to prove by parol evidence the real contract, in pursuance of which the deed was given.

In *Palmer* v. *Culbertson* (143 N. Y. 213) it was held competent to show by parol evidence that an absolute deed was intended as an advancement.

In the case at bar, the written instrument, bearing date May 4th, 1898, was a conveyance of three inches of land, a party wall agreement, and a covenant on the part of the

defendant Matthews not to use her premises for the period of five years as a place for the sale of liquors.

It has been held that an agreement which was a part of the consideration for the sale, restricting the use of the property, is not merged in the deed, and does not qualify or in any way affect the title to the land; and the admission of parol evidence to prove such an agreement is no infringement of the rule that parol evidence is not admissible to contradict, vary or explain a written instrument.

Evidence is admissible of a parol agreement that no part of the premises should be used for the sale of intoxicating liquors, and upon proof of the agreement the grantee shall be restrained from using the property for such purpose. (1 Jones' Law of Real Property, § 744, and cases cited.)

The case before us is of trifling importance, but the principle which will be established in the reversal of this judgment is far-reaching, and as I regard it opposed to the settled law of the state.

I vote for the affirmance of the judgment.

PARKER, Ch. J., GRAY and CULLEN, JJ., concur with O'BRIEN, J.; MARTIN and VANN, JJ., concur with BARTLETT, J.

Judgment reversed, etc.