Breitel, J.
Plaintiff Rose King, the mortgagee of a bowling alley, and defendant Genevieve Pelkofski, the beneficiary of an inter vivas trust agreement covering the same property, cross-appeal from a judgment entered upon an order of the Appellate Division, Second Department. Plaintiff instituted this action to foreclose her mortgage which secured a loan by plaintiff to defendant Joseph Pelkofski, the owner of the legal fee, in the amount of $75,000, none of which has been paid, as well as a chattel mortgage covering certain chattels in the bowling alley. Defendant Genevieve answered that the mortgages were void in that her husband, Joseph, the owner of the business, had previously conveyed the beneficial interest in the property to her by an inter vivas trust agreement. After a trial without a jury in the Supreme Court, Suffolk County, the Trial Justice dismissed the complaint in an opinion.
The Appellate Division reversed in a memorandum opinion, holding that, even though plaintiff’s mortgage was invalid, the *330 property should be sold and plaintiff mortgagee subrogated out of the proceeds to the extent that liens of certain prior creditors were discharged out of the funds lent by plaintiff to defendant Joseph Pelkofsld. Two Justices concurred in this holding but dissented from the refusal of the majority to grant a similar priority to plaintiff mortgagee with respect to two personal loans to the Pelkofskis which had also been satisfied out of the proceeds of plaintiff’s loan.
Both parties then appealed to this court but the appeal was dismissed as nonfinal because the Appellate Division order had directed a remission to the trial court to ascertain the total of plaintiff’s liens on the property (18 N Y 2d 688). The trial court has now determined that plaintiff mortgagee is entitled to a “ total payment and lien ” of $44,884.50 (including interest).
Defendant Genevieve now contends that plaintiff mortgagee is not entitled to any recovery by way of subrogation because “None of the * * * proceeds [of plaintiff’s loan] was disbursed for [her] benefit ”. Plaintiff mortgagee argues that the “ inter vivas trust agreement ” between the Pelkofskis did not convey anything to Genevieve other than an eventual right to half the proceeds from the sale of the business. Alternatively, plaintiff urges, as the dissent in the Appellate Division held, that she should also' be subrogated to the extent that the proceeds of her loan were used to repay the two personal loans. Plaintiff mortgagee’s alternative contention is correct and the judgment should be modified accordingly.
Joseph acquired the real property involved in 1954 and erected a bowling alley. In order to obtain funds for the improvement and maintenance of the business, Joseph borrowed $35,000 from the National Bank of Kings Park which was secured by a first mortgage on the property, dated and recorded in February, 1961. On August 3, 1961 the first mortgage was extended by an agreement which was also signed by Genevieve. The next day, evidently as an outgrowth of a marital dispute, Genevieve executed the following instrument which had been prepared by her attorneys:
“This Agreement, made this 4th day of August, 1961, by and between Joseph B. Pelkoeski, residing at 274 Burr Street, Commack, Town of Huntington, Suffolk County, New York, and Genevieve F. Pelkoeski, his wife, residing at the same address,
*331 WlTNESSETH:
Whereas, the parties desire that the ownership of the business transacted by Joseph B. Pelkofski, at Jericho Turnpike, Com-mack, N. Y., known as the Bowl-Mob including the real property on which it is situated, be held of record in the name of Joseph B. Pelkofski for business purposes and for the same reason that the ownership of record of the residence of the parties, viz., 274 Burr Street, Commack, N. Y., be held in joint names, and
Whereas, the said Joseph B. Pelkofski, desires to make provision for his wife, Genevieve F. Pelkofski,
Now, Therefore, in consideration of the premises and in further consideration of the sum of One Dollar ($1.00) paid to the said Joseph B. Pelkofski, receipt of which is hereby acknowledged, the said Joseph B. Pelkofski, for himself, his heirs and assigns, hereby covenants and agrees to stand seized of the said business and real property above described as trustee for the benefit of his said wife, Genevieve F. Pelkofski, and that in the event of sale, he will transfer and pay over to the said Genevieve F. Pelkofski, her heirs and assigns, all the proceeds received by him for the residence No. 274 Burr Street, Commack, New York, and one-half of the proceeds of the sale of the business and/or business real estate and the said Joseph B. Pelkofski further agrees and covenants that he will make no leases of the business or business premises in excess of three (3) years without the permission of the said Genevieve F. Pelkofski, and that he will execute no instruments or agreements except in conformity with this instrument.”
Joseph executed the document on September 25, 1961 but it was not recorded until March 21,1963.
Between 1961 and 1964 (the exact dates are not revealed), the Pelkofskis entered into two other loan agreements for the benefit of the business. They borrowed $10,195 from the Valley National Bank (successor to the then existing mortgagee, the National Bank of Kings Park) in an agreement signed by both Joseph and Genevieve. The Pelkofskis also obtained a loan of $15,210 from Edna Stoothoff, evidenced by an agreement which was also .signed by Joseph and Genevieve and secured by property which was held in Genevieve’s name.
*332 Then, on June 4,1963, two and a half months after Genevieve had recorded the trust agreement, Joseph borrowed $75,000 from plaintiff mortgagee. As security for the loan, Joseph gave plaintiff mortgages on the bowling alley and on certain of its chattels. These mortgages were promptly recorded and filed. With the proceeds of this loan, Joseph proceeded to discharge the following debts: the first mortgage and loan from the old National Bank of Kings Park, which by then had been reduced from $35,000 to $26,411.98; the unsecured $10,195 loan from the Valley National Bank; and the $15,210 loan from Edna Stoothoff secured by property in Genevieve’s name. Joseph also utilized $3,025 of the proceeds from plaintiff’s loan to satisfy an outstanding real property tax bill on the mortgaged premises.
Joseph thereafter defaulted on the loan from plaintiff. The last interest paid was in March, 1964, and there have never been any payments of principal. Moreover, he did not pay either the real property taxes for 1963 and 1964 or the fire insurance premiums for this period. These charges, which amounted to $9,516.88, were paid by plaintiff mortgagee, bringing her total disbursement on the investment to $84,516.88.
The Supreme Court held that the agreement of August 4, 1961 between Joseph and Genevieve was a valid inter vivas trust and that Joseph had no power to mortgage the property to plaintiff mortgagee. The court also held that plaintiff mortgagee was not entitled to subrogation because there was no evidence of fraud and she had been at fault for failing to discover the recording of the trust agreement.
The Appellate Division reversed and held that plaintiff mortgagee was entitled to be subrogated to the rights of the prior mortgagee (the National Bank of Kings Park) whose lien, which was senior to Genevieve’s interest in the property, had been discharged by the proceeds of plaintiff’s loan. Plaintiff mortgagee was also granted a priority for the $3,025 of her loan used by Joseph to satisfy the tax bill as well as the $9,516.88 subsequently expended by plaintiff for the delinquent tax charges and fire insurance premiums. Finally, the majority held that it would not extend “ the doctrine [of equitable subrogation] * * * to the payment of the [$10,195 Valley National Bank loan and the $15,210 Stoothoff loan] * * * *333 which were personal obligations and did not affect the defendant’s interest in the real property as created by the trust agreement Two Justices dissented only on this point, stating that it was ‘ ‘ illogical and inequitable ’ ’ to deny plaintiff mortgagee priority with respect to the payment of these loans since they were obligations of Genevieve’s which had been discharged with funds provided by plaintiff mortgagee.
As the August 4, 1961 agreement between the Pelkofskis provided for a “trustee [Joseph], an estate devised to him [the bowling alley], and a beneficiary [Genevieve] ”, the Supreme Court and the Appellate Division correctly held that it created an inter vivas trust (Greene v. Greene, 125 N. Y. 506, 510). It is unnecessary to determine whether an active or a passive trust was thus established. Assuming that it was a passive trust and that Joseph could, therefore, mortgage his half of the property, he still had no right to burden Genevieve’s half with a lien (Potter v. Hodgman, 81 App. Div. 233, 235, affd. 178 N. Y. 580). But even though plaintiff’s lien is not a legal charge upon the share owned by Genevieve, plaintiff mortgagee still may have an equitable right of subrogation against that half insofar as the proceeds of plaintiff’s loan were used to discharge debts owed jointly by Joseph and Genevieve. On the other hand, the same result would obtain if the instrument is an active trust. The mortgage would then extend to all the property, albeit invalidly, but, upon the sale of the property, the right of Genevieve to one half the proceeds would still be subject to the same right of subrogation, assuming it exists.
Turning to the core question, that of subrogation, the governing principle has been stated as follows: “ Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder.” (Restatement, Restitution, § 162.) This principle has been applied to situations, such as the one at bar, where the funds of a mortgagee are used to satisfy the lien of an existing, known incumbrance when, unbeknown to the mortgagee, another lien on the property exists which is senior to his but junior to the one *334 satisfied with his funds. In order to avoid the unjust enrichment of the intervening, unknown lienor, the mortgagee is entitled to he subrogated to the rights of the senior incumbrance (Whitestone Sav. & Loan Assn. v. Moring, 286 App. Div. 1042, 1043; Union Sav. Bank of Patchogue v. Dudine, 40 Misc 2d 155, 156-157 [where subrogation was allowed on very similar facts]; Pipola v. Chicco, 274 F. 2d 909, 914-915 [2d Cir., Friendly, J.]; see The Thrift v. Michaelis, 259 N. Y. 302, 303-304; New York Fed. Sav. & Loan Assn. v. Griggs, 204 N. Y. S. 2d 647, 649 [Sup. Ct., Westchester County]; Ann.: Mortgage-Subrogation-Failure of Title, 151 A. L. R. 423, 425).
Here, the Appellate Division correctly found that plaintiff mortgagee should be subrogated to the rights of the first mortgagee (the National Bank of Kings Park) whose lien had been satisfied by the proceeds of plaintiff’s loan. That lien was senior to the interest of Genevieve in the property and, as the Appellate Division held, ‘ ‘ Equity will preserve for the benefit of the plaintiff the senior incumbrance which she caused to be discharged ’ ’. And, of course, it will be recalled that Genevieve herself had signed the extension agreement for this incumbrance.
With respect to the taxes and the fire insurance premiums either paid directly by plaintiff mortgagee or from the proceeds of her loan, these had been charges against the property which were satisfied for the Pelkofskis by plaintiff mortgagee. Consequently, as the Appellate Division held, .she is similarly entitled to a priority for these amounts (see 3105 Grand Corp. v. City of New York, 288 N. Y. 178, 181; see, generally, 83 C. J. S., Subrogation, § 44).
Finally, the same equitable principles require that plaintiff mortgagee be subrogated also to the rights of the Valley National Bank and Mrs. Stoothoff whose loans were discharged by the proceeds of plaintiff’s loan. Genevieve was a cosigner on both of these obligations and her own separate property was pledged as security for the Stoothoff loan. Moreover, while the majority in the Appellate Division held that these were “ personal obligations ” which were unrelated to Genevieve’s interest in the real property, it appears that the proceeds of these loans were used for the improvement and the maintenance of the business. Under these circumstances, plaintiff mortgagee is entitled also to a priority in the amount of these loans (United Fed. Sav. & *335 Loan Assn. v. Johnson, 181 Okla. 328, 332-333; Gladowski v. Felczak, 346 Pa. 660; 83 C. J. S., Subrogation, § 44, p. 665, supra).
Accordingly, the judgment entered upon the order of the Appellate Division should be modified to grant plaintiff a further priority from the proceeds of the ,sale of the security in the amount of $25,405* plus interest, and, as thus modified, affirmed, with costs to plaintiff-appellant-respondent against defendant-respondent-appellant.
Chief Judge Fuld and Judges Van Voorhis, Burke, Scileppi, Bergan and Keating concur.
Judgment modified in accordance with the opinion herein and, as modified, affirmed, with costs to plaintiff-appellant-respondent against defendant-respondent-appellant.