**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Zenowia BARAN, Ostap Baran, and Self Reliant (NY) Federal Credit Union, Defendants–Appellants,**

**Joseph F. Farano, Maria Farano, Joseph M. Farano, Phyllis Marie Farano, and Hartford Accident & Indemnity Co., Defendants.**

**No. 1228, Docket 92–6279.**

United States Court of Appeals,
Second Circuit.

Argued April 26, 1993.

Decided June 14, 1993.

26

Burton Aronson, Garden City, NY (Samuel Kirschenbaum, Kirschenbaum & Kirschenbaum, on the brief), for defendants-appellants.

Gabriel W. Gorenstein, Asst. U.S. Atty., New York City (Roger S. Hayes, U.S. Atty. and Ping C. Moy, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before: NEWMAN and MAHONEY, Circuit Judges, and EGINTON,* District Judge.

* The Honorable Warren W. Eginton of the United States District Court for the District of Connecti-    cut, sitting by designation.

JON O. NEWMAN, Circuit Judge:

This appeal primarily concerns whether a United States tax lien should be subordinated to the junior lien of a mortgagee through the doctrine of equitable subrogation. The issue arises on the appeal of Zenowia Baran, Ostap Baran, and Self Reliant (NY) Federal Credit Union ("Self Reliant") from the October 26, 1992, judgment of the District Court for the Southern District of New York (Miriam Goldman Cedarbaum, Judge) foreclosing a United States tax lien on property owned by the Barans. The judgment requires the Barans or Self Reliant to pay the United States $259,601.48 within 30 days or suffer an immediate sale of the property. The judgment also awards the Barans and Self Reliant $259,601.48 against the former owners of the property, Joseph F. Farano, Maria Farano, Joseph M. Farano, and Phyllis Marie Farano. On appeal, the Barans and Self Reliant argue (1) that the interest on which the Government foreclosed, a life estate in favor of Maria Farano, was never created or had terminated, (2) that the District Court improperly valued the life estate, and (3) that Self Reliant is equitably subrogated to a prior mortgagee's interest. We reject each of the first two arguments, but we conclude that the case must be remanded for further consideration of equitable subrogation.

## Background

In 1980, Maria Farano,[1] the owner of a house located at 52 Stoneleigh Road, Yonkers, New York (the "property"), deeded the property to her children, Joseph M. Farano and Phyllis Marie Farano (the "Farano children"), "subject to a life estate in the lives of" herself and her husband Joseph F. Farano (the "Farano parents"). In 1982, the IRS filed a federal tax lien against the Farano parents for an unpaid assessed balance of $82,221.86. Pursuant to 26 U.S.C. § 6321 (1988), the tax lien attached to all property owned by the Farano parents, and has continued to accrue interest. There appears to be agreement that Maria Farano's deed was ineffective to create a life estate for her husband. The tax lien therefore applied, at most, to Maria's life estate. In 1986, the Farano children and the Farano parents together conveyed the property to Zenowia and Ostap Baran for $440,000. The purchase was financed by Self Reliant. Apparently unaware of the federal tax lien, Self Reliant, in addition to loaning the Barans money to pay the Faranos, provided a check at the closing for $68,293.90 to discharge a prior mortgage held by Chase Manhattan Bank. The Chase Manhattan mortgage was senior to the federal tax lien.

In 1987, the Government instituted proceedings to obtain judgments against the Farano parents on the tax assessments and to foreclose on the tax lien. After the District Court entered judgment in January 1992 against all four Faranos for $316,714.76, the then current amount of the IRS claim, the Government moved to foreclose the tax lien. The District Court held that the Government was entitled to the value of Maria Farano's life estate, that the life estate should be valued according to an actuarial table, and that Self Reliant was not entitled to be subrogated to the Chase Manhattan mortgage. The actuarial table provided that the value of a life estate of a 56–year old woman was 73.531 percent of the total value of the property. After the parties agreed that the total value of the property was $353,050, the District Court entered judgment in favor of the Government in the amount of $259,601.84.

## Discussion

1. *Creation of a life estate.* The Barans and Self Reliant make several related arguments concerning the 1980 deed that conveyed the property to the Farano children "subject to" a life estate in favor of Maria Farano. They contend that a deed cannot create a life estate, that the life estate did not include the entire premises, that the life estate terminated upon an attempt to attach Maria Farano's assets, and that summary judgment was inappropriate because the deed was ambiguous. None of these arguments is convincing. New York authorities recognize that a life estate can be creat-

---

1. The first name is spelled "Marie" in some of the papers.

ed by reservation in a deed. No additional instrument is required. *See, e.g., Winick v. Winick,* 26 A.D.2d 663, 272 N.Y.S.2d 869 (2d Dep't 1966), *app. denied,* 19 N.Y.2d 581, 279 N.Y.S.2d 1026, 226 N.E.2d 707 (1967). The phrase "life estate" has a well-established meaning. It is an estate in land giving the life tenant full and exclusive possession of the property for the duration of the life tenant's life. *See In re Hinman's Will,* 22 Misc.2d 655, 657, 200 N.Y.S.2d 170, 172 (Surr.Ct.1960). Because there was no ambiguity in the deed, the District Court properly declined to consider extrinsic evidence, *see Uihlein v. Matthews,* 172 N.Y. 154, 158–60, 64 N.E. 792, 794 (1902), and properly resolved the matter without a trial, *see.Hurd v. Lis,* 92 A.D.2d 653, 654, 460 N.Y.S.2d 173, 174 (3d Dep't 1983).

■ 2. *Value of the life estate.* The Barans and Self Reliant next contend that it was "unconscionable" for the District Court to conclude that the life estate was worth 73.531 percent of the total value of the property and that the remainder interest was worth only 26.469 percent of the total value. The parties proposed competing methods of valuation to the District Court. The Barans and Self Reliant submitted an affidavit from an appraiser stating that the life estate was probably unmarketable and that its fair market value was at most $80,000. The Government did not submit an appraisal, but requested instead that the District Court use an IRS actuarial table intended for evaluating life estates for tax purposes.

The District Court acted within its discretion in accepting the Government's valuation method. 26 U.S.C. § 7403 (1988) allows the Government to seek the sale of the whole property in order to maximize the value of its interest. *See United States v. Rodgers,* 461 U.S. 677, 691, 103 S.Ct. 2132, 2142, 76 L.Ed.2d 236 (1983); *United States v. Kocher,* 468 F.2d 503, 506–07 (2d Cir.1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973). Often, as in this case, "interests in property, when sold separately, may be worth ... significantly less than the sum of their parts." *Rodgers,* 461 U.S. at 694, 103 S.Ct. at 2143. Apparently wishing to retain ownership of the property in the Barans, the

defendants requested an opportunity to satisfy the Government's claim prior to a sale of the property. The District Court was free to grant that request while still valuing the life estate as a percentage of the value of the entire property through use of "a standard statutory or commercial table." *See id.* at 698–99, 103 S.Ct. at 2145. Defendants make no claim that the standard IRS table for valuing life estates erroneously overstates the economic value of a life estate relative to the remainder interest. *See Harris v. United States,* 764 F.2d 1126, 1130–31 (5th Cir. 1985).

■ 3. *Equitable subrogation.* Finally, Self Reliant contends that it should be equitably subrogated to the Chase Manhattan mortgage that was discharged when the Barans purchased the property. Because the Chase Manhattan mortgage was senior to the federal tax lien, subrogation would place Self Reliant in a position senior to the Government to the extent of $68,293.90. The Government responds that the District Court acted within its discretion in declining to apply the doctrine because there was no evidence that Self Reliant was defrauded or that Self Reliant had agreed with the Barans that the loan proceeds would be used, in part, to discharge the Chase Manhattan mortgage. The Government also appears to contend that subrogation is not required because Self Reliant would not be prejudiced by remaining junior to the Government.

■ Under 26 U.S.C. § 6323(i)(2) (1988), we look to state law to determine whether equitable subrogation is available. New York courts have routinely applied subrogation "where the funds of a mortgagee are used to satisfy the lien of an existing, known incumbrance when, unbeknown to the mortgagee, another lien on the property exists which is senior to his but junior to the one satisfied with his funds." *King v. Pelkofski,* 20 N.Y.2d 326, 333–34, 282 N.Y.S.2d 753, 758, 229 N.E.2d 435, 439 (1967). *See, e.g., The Thrift v. Michaelis,* 259 N.Y. 302, 181 N.E. 580 (1932); *Whitestone Savings & Loan Association v. Moring,* 286 A.D. 1042, 145 N.Y.S.2d 335 (2d Dep't 1955); *Union Savings Bank of Patchogue v. Dudine,* 40 Misc.2d 155, 242 N.Y.S.2d 692 (Sup.Ct.1963).

The purpose of subrogation is to prevent a junior lienor from converting the mistake of the lender "into a magical gift for himself." *Long Island City Savings & Loan Association v. Skow*, 25 A.D.2d 880, 881, 270 N.Y.S.2d 234, 236 (2d Dep't 1966). In effect, subrogation erases the lender's mistake in failing to discover intervening liens, and grants him the benefit of having obtained an assignment of the senior lien that he caused to be discharged. *See Pipola v. Chicco*, 274 F.2d 909, 914–15 (2d Cir.1960).

■ Although other states may ,ake a different view, New York does not require the lender to offer an excuse for his failure to discover the intervening lien. *See King v. Pelkofski*, 20 N.Y.2d at 332, 282 N.Y.S.2d at 757, 229 N.E.2d at 438–39 (requiring equitable subrogation even though intervening encumbrance was properly recorded). Moreover, while some cases appear to require as a condition of subrogation that the lender discharge the senior lien pursuant to an agreement with the mortgagor, *see, e.g., Home Title Guaranty Co. v. Carey*, 144 N.Y.S.2d 116, 119 (Sup.Ct.1955), such an agreement may be inferred from the fact that Self Reliant made its payment to discharge the Chase Manhattan mortgage as part of the closing at which it supplied financing with the intent of retaining a first mortgage on the property.

■ A more subtle question is the effect of equitable subrogation in this case. The Government appears to suggest that subrogation is inappropriate because it cannot increase the extent to which Self Reliant's interest is secured. The Government's theory is that because the discharged Chase Manhattan mortgage (worth approximately $68,000) was for less than the difference between the value of the entire property (approximately $353,-000) and the value of the life interest subject to the tax lien (approximately $260,000), it makes no difference whether Self Reliant has priority to the extent of the Chase Manhattan mortgage. In other words, the Government contends, Self Reliant would be secured to the extent of $93,000 ($353,000–$260,000) regardless of whether it took that amount from the proceeds of a sale after satisfaction of the tax lien or whether it took $68,000 ahead of the Government and took the remaining $25,000 after the Government.

The difficulty with this theory is that the tax lien is not on the entire property, but only on the life estate. Indeed, the tax lien is for more than $260,000, but may be satisfied out of the proceeds of sale only to that extent because that is the value of the life estate. In contrast, the former Chase Manhattan mortgage was in the entire property. When the property was divided into a life interest and a remainder, the lien continued against both interests, and the lienholder became entitled to proceed against either interest. *See Miller v. Federal Land Bank of Spokane*, 587 F.2d 415, 420 (9th Cir.1978), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979); *Malinoski v. Mekody*, 48 N.Y.S.2d 940, 946 (Sup.Ct.1944), *aff'd*, 269 A.D. 717, 53 N.Y.S.2d 758 (3d Dep't), *app. denied*, 269 A.D. 791, 55 N.Y.S.2d 847 (3d Dep't 1945). If equitable subrogation is available and the former Chase Manhattan mortgage is satisfied from the life estate, the secured value of the Government's lien drops to $192,000, and Self Reliant's secured interest increases to $161,000.[2]

Although the decision to apply equitable subrogation is committed to the discretion of the trial court, the record is unclear as to whether the District Court recognized that it had discretion under New York law to subrogate Self Reliant to the discharged Chase Manhattan lien. Accordingly, we will vacate the judgment and remand the matter to the District Court for further consideration of the equities, as well as for any adjustments in the relative interests of the parties required by the payment or non-payment of interest on the portion of the Self Reliant mortgage corresponding to the prior Chase Manhattan mortgage. *See Pipola v. Chicco*, 274 F.2d at 915 (mortgagee and mortgagor entitled to priority over tax lien to extent of

2. The Government contends that under the doctrine of marshaling of assets, Self Reliant should be required to satisfy its lien solely from the remainder interest. Marshaling of assets cannot be required, however, when it will prejudice the senior creditor. *See Walther v. Bank of New York*, 772 F.Supp. 754, 767 (S.D.N.Y.1991). Self Reliant would be prejudiced if it were required to satisfy the subrogated Chase Manhattan lien from the remainder interest.

discharged prior mortgage and hypothetical interest payments on prior mortgage).

Vacated and remanded.