Holtonb, LLC v Everest Hotel Group, LLC (2025 NY Slip Op 01266)

Holtonb, LLC v Everest Hotel Group, LLC

2025 NY Slip Op 01266

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

CV-23-0955
[*1]Holtonb, LLC, as Assignee of New York Business Development Corporation, et al., Respondents,
v
The Everest Hotel Group, LLC, et al., Defendants, and Visions Federal Credit Union, Appellant.

Calendar Date:January 6, 2025

Before:Garry, P.J., Pritzker, Ceresia, Powers and Mackey, JJ.

Maynard, O'Connor, Smith & Catalinotto, LLP, Albany (Justin W. Gray of counsel), for appellant.
Coughlin & Gerhart, LLP, Binghamton (Alan J. Pope of counsel), for respondents.

Mackey, J.
Appeal from an order of the Supreme Court (John Rowley, J.), entered April 28, 2023 in Tioga County, which, among other things, granted plaintiffs' motion for summary judgment.
At issue in this case is whether a mortgage recorded by defendant Visions Federal Credit Union (hereinafter Visions) in 2015 should have priority, under the doctrine of equitable subrogation, over a mortgage recorded by the New York Business Development Corporation (hereinafter NYBDC) in 2014. Supreme Court ruled that it should not, and Visions appeals. We affirm.
In 2009, defendant Khanzada Khan and his spouse, Elke Borgstadt Khan, executed a note in favor of Visions, secured by a mortgage encumbering residential property owned by the Khans in the Town of Owego, Tioga County (hereinafter the 2009 Visions mortgage). Later, in 2012, Visions loaned funds to defendant The Everest Hotel Group, LLC [FN1] (hereinafter Everest) and the Khans, secured by a second mortgage on the Khans' residential property (hereinafter the 2012 Visions mortgage). In 2014, Everest executed a note in favor of NYBDC, secured by a mortgage encumbering multiple properties, including the subject property (hereinafter the NYBDC mortgage). That same day, Visions, Everest and the Khans entered into a mortgage consolidation and release agreement, under the terms of which Visions discharged and released its interest under the 2012 Visions mortgage. Subsequently, in 2015, Khanzada Khan executed a note in favor of Visions, again secured by a mortgage on the subject property (hereinafter the 2015 Visions mortgage).[FN2] A portion of these funds was used to satisfy the 2009 Visions mortgage, which was discharged. The following year, Khanzada Khan executed a note in favor of plaintiff Dolores Pope, secured by a mortgage encumbering, among other things, the residential property (hereinafter the Pope mortgage). As a result of the above transactions, there were three mortgage liens against the Khan residential property when this action was commenced:
the NYBDC mortgage, recorded on January 24, 2014;
the 2015 Visions mortgage, recorded on May 7, 2015; and,
the Pope mortgage, recorded on May 23, 2016.
In 2020, the NYBDC mortgage was assigned to plaintiff HoltonB, LLC. Plaintiffs later commenced this action upon Khanzada Khan's failure to make timely payments under each mortgage held by plaintiffs, seeking, as is relevant here, a declaration that the NYBDC mortgage has a first priority position and the Pope mortgage has a second priority position as to the residential property, and ordering the sale thereof. Visions, Khanzada Khan and Everest answered, and plaintiffs thereafter moved for summary judgment, among other things. Visions, in turn, cross-moved for summary judgment, seeking an order declaring the 2015 Visions mortgage superior in priority to plaintiffs' mortgages and the dismissal of plaintiffs' complaint as against Visions. Supreme Court granted plaintiffs' motion in its entirety and dismissed Visions' cross-motion[*2]. Visions appeals.
Visions' primary contention on appeal is that the 2015 Visions mortgage has priority over the NYBDC mortgage under the doctrine of equitable subrogation. Under that doctrine, "[w]here property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder" (King v Pelkofski, 20 NY2d 326, 333 [1967] [internal quotation marks and citation omitted]; accord Green Tree Servicing, LLC v Feller, 159 AD3d 1246, 1248 [3d Dept 2018]). Pertinent here, "[t]he doctrine operates to erase the lender's mistake in failing to discover intervening liens[ ] and grants him [or her] the benefit of having obtained an assignment of the senior lien that he [or she] caused to be discharged. In this manner, equitable subrogation preserves the proper priorities by keeping the first mortgage first and the second mortgage second," thus preventing the lender's mistake from being converted into an unintended windfall for the junior lienor (Arbor Commercial Mtge., LLC v Associates at the Palm, LLC, 95 AD3d 1147, 1149 [2d Dept 2012] [internal quotation marks, brackets and citations omitted]; see Elwood v Hoffman, 61 AD3d 1073, 1075 [3d Dept 2009]). Nevertheless, "[s]ubrogation is not a matter of right but an equitable doctrine, designed to promote justice and is thus dependent on the particular relationship of parties and nature of controversy in each case" (Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 180 AD3d 1297, 1299 [3d Dept 2020] [internal quotation marks and citation omitted], lv dismissed 36 NY3d 959 [2021]). Moreover, although "[e]quitable subrogation remains available even where the subrogee possesses constructive knowledge of the intervening interest, . . . actual notice of such interest bars application of the doctrine" (Green Tree Servicing, LLC v Feller, 159 AD3d at 1248; see Nationstar Mtge. LLC v Adee, 172 AD3d 1693, 1695 [3d Dept 2019]).
In arguing that the doctrine of equitable subrogation is applicable, Visions alleges that, in discharging the 2012 Visions mortgage with proceeds from the NYBDC mortgage, the intent of the parties to the 2014 agreement was for the 2009 Visions mortgage to maintain its senior position. Indeed, the undisputed evidence establishes that Visions was a party to the 2014 agreement and was in direct communication with NYBDC at the time that the NYBDC mortgage was executed. The NYBDC mortgage, however, was mistakenly not identified as encumbering the subject property when Visions undertook a title search during the processing of the 2015 Visions mortgage. Owing to this mistake, after Visions discharged the 2009 Visions mortgage it lost its first priority position on the property, with the 2015 Visions mortgage being subordinate to the NYBDC mortgage. Contrary [*3]to Visions' assertions, however, plaintiffs submitted evidence that, although NYBDC understood at the time of the 2014 agreement that its interest would be junior to the 2009 Visions mortgage, it was not NYBDC's intent that the NYBDC mortgage would subordinate to any subsequent Visions mortgage on the property. Visions' submissions failed to establish that the parties to the 2014 agreement had agreed otherwise, and there is no evidence that NYBDC was in any way involved in the 2015 mortgage transaction. In fact, Visions submitted the affidavit of its senior officer who stated that, had the title search undertaken in issuing the 2015 Visions mortgage identified the NYBDC mortgage as encumbering the property, the closing attorney "would have taken the steps necessary to preserve Visions' first position," the implication being that there was no prior agreement securing a first priority position for the 2015 Visions mortgage once the 2009 Visions mortgage was discharged. The foregoing supports Supreme Court's finding that Visions had actual knowledge of the NYBDC mortgage at the time of the discharge of the 2009 Visions mortgage and issuance of the 2015 Visions mortgage, precluding the application of the doctrine of equitable subrogation (see Matter of Kissous v Futerman, 217 AD3d 1002, 1004 [2d Dept 2023]; Nationstar Mtge. LLC v Adee, 172 AD3d at 1695; RTR Props., LLC v Sagastume, 145 AD3d 697, 698-699 [2d Dept 2016]). We are unpersuaded by Visions' contention that failing to grant the 2015 Visions mortgage first priority would be inequitable, as the record does not support its assertion that the parties to the 2014 agreement intended the NYBDC mortgage to maintain a junior position to any subsequent encumbrances on the property (see Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 180 AD3d at 1299).
We further find no merit to Visions' claim that HoltonB was not a bona fide purchaser in its assumption of the NYBDC mortgage. "A bona fide purchaser is someone who purchases real property in good faith, for valuable consideration, without actual or record notice of another party's adverse interests in the property and who is the first to record the deed or conveyance; once established as a bona fide purchaser, he or she takes title to the real property free and clear of any adverse interest had by another party" (U.S. Bank N.A. v Jordan, 176 AD3d 1523, 1524 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 910 [2020]; see Real Property Law §§ 266, 291). However, "if a purchaser or encumbrancer knows facts that would excite the suspicion of an ordinarily prudent person and fails to investigate, the purchaser or encumbrancer will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed" (Booth v Ameriquest Mtge. Co., 63 AD3d 769, 769 [2d Dept 2009] [internal quotation marks and citations omitted]; see U.S. Bank N.A. v Jordan, 176 AD3d at 1524). [*4]Here, there is no indication that HoltonB "had previous notice, whether actual or constructive, of [any] fraudulent intent of [NYBDC], or of . . . fraud rendering void the title of [NYBDC]" (Real Property Law § 266). HoltonB conducted a title search that revealed that the 2009 Visions mortgage had been discharged in 2015 and, as previously discussed, nothing in the record indicates that NYBDC entered into the 2014 agreement with the intent that the NYBDC mortgage maintain a junior position to any subsequent Visions mortgage.
Finally, plaintiffs concede, and the record confirms, that the Pope mortgage is subordinate to the 2015 Visions mortgage (see Real Property Law § 291; Citibank v Restrepo, 226 AD2d 575, 576 [2d Dept 1996]). Accordingly, we modify the order to that extent.
Garry, P.J., Pritzker, Ceresia and Powers, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs' motion seeking a declaration that the Pope mortgage holds a second priority position on the subject property; that portion of defendant Visions Federal Credit Union's cross-motion seeking a declaration that it holds a priority position superior to the Pope mortgage over the subject property granted; and, as so modified, affirmed.

Footnotes

Footnote 1: Khanzada Khan acted on behalf of Everest, as its manager/member.

Footnote 2: Elke Borgstadt Khan had died in 2014.